**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Howard Evans MASON, Jr. and Jerry Michael Edwards, Defendants-Appellants.**

**Nos. 365–70, 366–70.**

United States Court of Appeals, Tenth Circuit.

April 9, 1971.

Rehearing Denied in No. 365–70 May 3, 1971.

Rehearing Denied in No. 366–70 May 26, 1971.

---

1. The defendant took the stand and denied possession or knowledge of the existence of the checks and bond.

Jeff M. Laird, Asst. U. S. Atty., W. D. of Okl., Oklahoma City (William Burkett, U. S. Atty., Oklahoma City, Okl., with him on the brief), for plaintiff-appellee.

Mac Oyler, Oklahoma City, Okl., for defendant-appellant Mason.

Gary M. Bush, Oklahoma City, Okl., for defendant-appellant Edwards.

Before PICKETT, BREITENSTEIN and SETH, Circuit Judges.

PICKETT, Circuit Judge.

Appellants Mason and Edwards were jointly charged in the United States District Court for the Western District of Oklahoma with entering a building used in part as a savings and loan association with intent to commit larceny therein in violation of 18 U.S.C. § 2113(a). The first trial resulted in a mistrial when one of the jurors became ill and was unable to continue. The second trial began a few days later, resulting in a conviction of both defendants. A sentence of ten years' imprisonment was imposed on

each defendant under the provisions of 18 U.S.C. § 4208(a) (2).

The sufficiency of the evidence to support the conviction is not questioned and only a brief résumé of the facts is required to determine the issues raised. On November 22, 1969, at approximately eight o'clock in the evening, near the entrance to the University of Oklahoma Medical Center Federal Credit Union, which is located within one of the University of Oklahoma Medical Center buildings in Oklahoma City, Oklahoma, Mason and Edwards were observed and questioned by Billy D. Smith, a security guard for the building. Smith recognized Mason and Edwards from previous contacts but did not know their names. At the time each was wearing a green electrical uniform with "A & A Electrical Company" in red letters on the back of the uniform. When questioned by Smith as to what they were doing they responded that they were working on the lights for a classroom located above the Credit Union. Mason had a test light in his hand and Edwards was holding a screwdriver. Smith left to check their explanation, and when he returned both were gone. Smith then noticed that there were pry marks on the door to the Credit Union and the door hinge pins had been removed. Also, a box of tools containing a "Porta-Power," sledge hammer, chisel and flashlight had been left directly outside the Credit Union door. The box of tools was examined later by the identification officer for the Oklahoma City Police Department. The officer indicated that the "Porta-Power" is often used to gain entry into safes and referred to it as a "spreader." The purchasing agent for the Medical Center also observed Mason and another man whom he was unable to identify at the entrance to the Credit Union dressed in the manner described by Smith. Neither Mason nor Edwards had ever been employed by A & A Electrical Company. The "Porta-Power" had been rented from a rental agency by Mason and Edwards on the day of the attempted break-in at the Credit Union.

■■ It is first contended that the indictment does not charge the commission of a crime against the federal government.[1] Appellants maintain that the word "therein" in the indictment refers to "building" generally, and not to that specific portion of the building used by the Credit Union—consequently, the indictment does not charge a crime against the United States within the meaning of 18 U.S.C. § 2113(a).[2] The test of the sufficiency of an indictment is that standing alone it contains "the elements of offense intended to be charged and must be sufficient to apprise the accused of the nature of the offense so that he may adequately prepare a defense." After a verdict or plea of guilty, "every intendment must be indulged in support of the indictment or information and such a verdict or plea cures mere technical defects unless it is apparent that they have resulted in prej-

---

1. The indictment reads as follows:
"THE GRAND JURY CHARGES:
On or about the 22nd day of November, 1969, at Oklahoma City, Oklahoma County, in the Western Judicial District of Oklahoma,
_____HOWARD EVANS MASON, JR., and JERRY MICHAEL EDWARDS, _____
did wilfully and unlawfully enter a building used in part as a savings and loan association, to-wit, the University of Oklahoma Medical Center Federal Credit Union, a Federal credit union as defined in Section 2 of the Federal Credit Union Act, with intent to commit larceny therein, in violation of Title 18, United States Code, Section 2113 (a)."

2. 18 U.S.C. § 2113(a) in pertinent part is as follows:
"Whoever enters or attempts to enter any bank, or any savings and loan association, or any building used in whole or in part as a bank, or as a savings and loan association, with intent to commit in such bank, or in such savings and loan association, or building, or part thereof, so used, any felony affecting such bank or such savings and loan association and in violation of any statute of the United States, or any larceny—Shall be fined not more than $5,000 or imprisoned not more than twenty years, or both."

udice to the defendant." Clay v. United States, 326 F.2d 196, 198 (10th Cir. 1963), cert. denied, 377 U.S. 1000, 84 S. Ct. 1930, 12 L.Ed.2d 1050.

▓ The essential elements of an 18 U.S.C. § 2113(a) offense as is presented by the circumstances here involved are (1) the entering of a building of the statutorily defined class, (2) with the intent to commit a larceny in the portion of that building used by a bank or savings and loan association as defined in the statute. See Colquette v. United States, 216 F.2d 591 (7th Cir. 1954). The decisions dealing with § 2113(a) are of little aid, but the use of the term "therein" in 18 U.S.C. § 2115 and its predecessor, which involved the unlawful entry into buildings occupied by United States post offices, was similar to the use of that term in the indictment; consequently, decisions construing the meaning of the term in the old statute are analogous.[3] See Pinkney v. United States, 380 F.2d 882 (5th Cir. 1967), cert. denied, 390 U.S. 908, 88 S. Ct. 831, 19 L.Ed.2d 876. The courts, in construing the statutory language of § 5478 with regard to the seemingly vague and ambiguous term, "therein," have consistently held that "therein" gave reference to the portion of the general building used as a post office and not to the literal construction which would have referred to the building in general. Sorenson v. United States, 168 F. 785 (8th Cir. 1909); United States v. Martin, 140 F. 256 (C.C.N.D.Ala.1905); United States v. Clifton, 91 F.Supp. 940 (E.D.Ark.1950); United States v. Saunders, 77 F. 170 (D.C.Ind.1896); cf. United States v. Wright, 365 F.2d 135 (7th Cir. 1966), cert. denied, 386 U.S.

918, 87 S.Ct. 879, 17 L.Ed.2d 789; McNealy v. Johnston, 30 F.Supp. 312 (N.D.Cal.1939). Although the indictment here is not a model of clarity and does not precisely follow the statutory language, it is sufficient to delineate the elements of the offense charged and to adequately apprise the accused that they were charged with entering a building with intent to commit larceny in a savings and loan association occupying a part of the building.

▓ It is next contended that the court erred in denying various motions submitted orally after the case had been called for trial. The first motion was for continuance, or in the alternative, to disqualify the jury array for cause. As to the issue of continuance, appellants submit that they were not informed until March 24, 1970 that the case would be set for trial on March 26, 1970, and therefore, there was not sufficient time to properly prepare the defense. The trial court found that the motion was not filed in good faith, but for the sole purpose of confusion and delay. The parties were prepared for trial on March 18 and during the course of the trial it became necessary to declare a mistrial because of the illness of a juror. There was no substantial showing that anything occurred after the mistrial which would necessitate a continuance. Furthermore, the accused had been confined for several months before trial and Edwards had been demanding a trial without further delay. We have often held that a motion for continuance is addressed to the trial court's discretion and is not subject to review unless such discretion has been abused. United States v. Eagleston, 417 F.2d 11 (10th

---

3. 18 U.S.C. § 2115 in pertinent part is as follows:

"Whoever forcibly breaks into or attempts to break into * * * any building used in whole or in part as a post office, with intent to commit in such post office, or building or part thereof, so used, any larceny or other depredation, shall be fined not more than $1,000 or imprisoned not more than five years, or both."

The predecessor to § 2115 here relevant was § 5478, and in pertinent part reads as follows:

"Any person who shall forcibly break into or attempt to break into any post office or any building used in whole or in part as a post office with intent to commit therein larceny or other depredation shall be punishable * * *."

Cir. 1969); Warden v. United States, 391 F.2d 747 (10th Cir. 1968). The challenge to the jury array is based upon the ground that the jurors who sat on the first trial remained on the array, thereby tainting it. It is also urged that an article which appeared in a local newspaper between the first and second trials indicating that an "assassination" attempt had been made upon one of the government's witnesses made it impossible to empanel an impartial jury from the existing array. In an order entered after the trial the court found that "(e)ach juror who was selected to try this case stated on voir dire examination that he or she had never heard of the case before; had never read any newspaper article nor had talked to anyone about the case, or heard anyone talk about the case." Furthermore, to assure an impartial jury, five talesmen were called, three of whom were selected to serve on the jury and appellants' counsel were permitted additional peremptory challenges which they declined to exercise. The essence of appellants' contention is directed to the qualifications of jurors, the determination of which rests in the sound discretion of the trial court and will not be interfered with on the appeal absent a clear showing of abuse of such discretion. United States v. Porth, 426 F.2d 519 (10th Cir. 1970), cert. denied, 400 U.S. 824, 91 S.Ct. 47, 27 L.Ed.2d 53.

The refusal of the trial court to require the United States to furnish the accused a transcript of the first trial proceedings without cost was not error. The requested transcript was for the testimony of Smith, which was alleged to be necessary for impeachment purposes. Counsel at the first and second trials were identical and fully aware of the substance of Smith's first testimony. The court found that the motion was for the purpose of delay and without merit. The record does not disclose any prejudice resulting from the failure to have the transcript. In their final pretrial motion appellants sought the subpoena of certain witnesses at government expense. The court found that the motion was without merit, would have worked a delay upon codefendant Edwards and would have impaired his right to a speedy trial, came too late, and could better have been handled by the use of affidavits. The granting of a request for a subpoena of witnesses at government expense is not an absolute right, but rather rests in the sound discretion of the trial court. Fed.R.Crim.P. 16(b); Speers v. United States, 387 F.2d 698 (10th Cir. 1967), cert. denied, 391 U.S. 956, 88 S.Ct. 1864, 20 L.Ed.2d 871; Findley v. United States, 380 F.2d 752 (10th Cir. 1967). Under the circumstances, we find no abuse of the court's discretion in its denial of the pretrial motions and the record shows no prejudice therefrom.

Next appellants contend that the trial court erred in not granting an evidentiary hearing outside the presence of the jury regarding the question of the courtroom identifications of appellants having been based upon tainted and suggestive photographic showings, and the court's failure to suppress such evidence. In dealing with this question, the Supreme Court in Simmons v. United States, 390 U.S. 377, 384, 88 S. Ct. 967, 971, 19 L.Ed.2d 1247 (1968), stated:

"* * * (E)ach case must be considered on its own facts, and that convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. * * *"

In the circumstances of this case, Smith, previously acquainted with both Mason and Edwards, identified them from a group of four photographs. He not only observed them at the time of the attempted entry, but talked to them. Hollowell, the manager of the rental agency from which the "Porta-Power" had been obtained, testified that on two separate occasions he was shown two separate sets of photographs, each containing the

appellants, and was immediately able to identify them. A third witness had observed the appellants in the Medical Building between eight and nine o'clock on November 22. Prior to making any photographic identification, he gave a general description of one of the men he had seen and then from six photographs was able to identify Mason. All three witnesses made in-court identification of the appellants. One identified only Mason, as he indicated he did not get a clear view of the other man. From our examination of the record we find no violation of due process in the photographic identification procedure, and it does not rise to the level of being "so unnecessarily suggestive and conducive to irreparable mistaken identification as to be a denial of due process." Belton v. United States, 429 F.2d 933, 936 (10th Cir. 1970). Furthermore, appellants' counsel extensively cross examined each identifying witness in an apparent effort to expose any potential error which might have occurred through the use of the photographic identification procedure. In this case, the use of cross examination would seem to be adequate to allow appellants' counsel to probe the validity of the photographic identification procedures without resorting to an evidentiary hearing outside the presence of the jury. See Belton v. United States, *supra.*

The alleged error, that the failure of the prosecution to prove statements made in its opening statement to the jury was prejudicial, cannot be considered as a transcript of that statement is not in the record. Fed.R.App.P. 10(b); Johns v. United States, 227 F.2d 374 (10th Cir. 1955). Furthermore, the failure to prove all the remarks in an opening statement, in the absence of a showing of prejudice, is not grounds for reversal. Mares v. United States, 409 F.2d 1083 (10th Cir. 1968), cert. denied, 394 U.S. 963, 89 S.Ct. 1314, 22 L.Ed.2d 564.

Finally Mason urges that he is wrongfully confined in the United States Penitentiary because of a variance between the oral and written sentence, and that the former is controlling.[4] After Mason's appeal had been filed, the district court entered two orders; the first directing that Mason be transferred from federal custody to the state authorities, and the second that he remain in federal custody. The two orders are a nullity, as the district court lost jurisdiction after the appeal was taken. Petuskey v. Rampton, 431 F.2d 378 (10th Cir. 1970); Aune v. Reynders, 344 F.2d 835 (10th Cir. 1965); Brasier v. United States, 229 F.2d 176 (10th Cir. 1955).

Where a conflict is presented between the oral and the written sentence and commitment, the former gov-

4. The oral sentence reads:
"THE COURT: It will be the order and judgment of the Court that you be committed to the custody of the Attorney General for a period of ten years. Congress provided twenty years for the offense that you committed. This sentence will be under the provision of 4208(A) (2). You know what it is, and it will follow the sentence imposed that you spoke of by the State of Oklahoma.
"In other words, it will be the direction of the Court that Mr. Mason be turned over to the Oklahoma state authorities and then under 4208(A) when you come to the federal authorities from the state authorities, if that is the way it is to work out, then they can exercise their right whether or not you should serve any under this sentence or all of it, 4208(A). They can do whatever

they please about it; so it's an indeterminate sentence, in reality."
The written sentence, in pertinent part, reads:
"IT IS ADJUDGED that the defendant is hereby committed to the custody of the Attorney General or his authorized representative for imprisonment for a period of ten (10) years on the one count of the Indictment or until defendant is otherwise discharged as provided by law, all as provided by Title 18, U.S.C., Section 4208(a) (2).
"IT IS FURTHER ORDERED that said sentence of confinement herein shall run consecutive to the state sentence.
"IT IS ADJUDGED that the defendant be remanded to the custody of the U. S. Marshal.
"Defendant is advised of his right to appeal."

**1300**

erns. Baca v. United States, 383 F.2d 154 (10th Cir. 1967), cert. denied, 390 U.S. 929, 88 S.Ct. 868, 19 L.Ed.2d 994; United States v. Morse, 344 F.2d 27 (4th Cir. 1965); Cuozzo v. United States, 340 F.2d 303 (5th Cir. 1965); Henley v. Heritage, 337 F.2d 847 (5th Cir. 1964). See also Gilliam v. United States, 106 U.S.App.D.C. 103, 269 F.2d 770 (1959); Kennedy v. Reid, 101 U.S.App.D.C. 400, 249 F.2d 492 (1957). It is obvious that the language and intent of the district court by its pronouncement of the oral sentence was that Mason should first serve his state sentence and then be delivered to the federal authorities for whatever action they might wish to take under the provisions of 18 U.S.C. § 4208 (a) (2), and this is the sentence to be enforced. While the formal judgment is somewhat ambiguous, it does not appear that there is a substantial conflict between it and the oral sentence pronounced by the court when Mason was before it for sentencing. If there is a variance, the oral pronouncement must prevail. Baca v. United States, *supra*. Whatever effect the present detention in the federal penitentiary has upon the federal sentence may be determined after service of the state sentence.

Affirmed.