UNITED STATES of America,
Plaintiff-Appellee,

v.

George Raymond DYBA,
Defendant-Appellant.

No. 76–1312.

United States Court of Appeals,
Tenth Circuit.

Argued and Submitted March 18, 1977.

Decided May 6, 1977.

Ronny D. Pyle, Asst. U.S. Atty. (David L. Russell, U.S. Atty., Oklahoma City, Okla., on the brief), for plaintiff-appellee.

Ralph Steele Wright, Billings, Mont., and Harry E. Claiborne, Las Vegas, Nev., for defendant-appellant.

Before McWILLIAMS, BREITENSTEIN and DOYLE, Circuit Judges.

WILLIAM E. DOYLE, Circuit Judge.

This is an appeal from a judgment of conviction in which the defendant had been charged with burglary of a bank, contrary to 18 U.S.C. Section 2113(a). The questions presented are:

First, whether the indictment contained insufficient allegations to apprise the defendant of the crime which was charged against him.

Second, whether statements made by the prosecution during final argument in which he commented on the failure of defendant to call witnesses constituted prejudicial error.

Third, whether the court erred in its comments to the jury given in connection with its so-called Allen charge; also, whether the timing of the Allen charge was itself prejudicial.

Fourth, whether as a matter of law the evidence was sufficient to sustain the verdict and whether the court erred in refusing to order disclosure of information in the government's file.

The facts are these. On January 29, 1973, a bank in Meeker, Oklahoma was burglarized. Three men entered the bank in the early morning hours. A barber who was in his shop across the street from the bank observed the three men. He notified the sheriff and other law enforcement officers. As a result, the effort of the three men was interrupted. Two of the three were apprehended at the scene.

Prentiss Newton Kirkland was seen by a sheriff's deputy running down an alley. The sheriff ordered him to stop. When Kirkland didn't, the deputy fired a shot which struck him.

In front of the bank, Theodore Paul Bates was seen jumping off the roof of the bank by a private citizen, who captured him.

A third man, allegedly the defendant herein, was captured by the sheriff who frisked him in search of a weapon. While the search was being carried out, the suspect jumped through an open door of the sheriff's automobile and drove away with the sheriff clinging to the side of the car. The sheriff fell from the vehicle but also fired a shot at close range at the burglar as the latter was driving away in the car. A slug was found in the dashboard of the car, the windshield was shattered, and there were three bloody napkins and a large quantity of blood inside the car.

The appellant was not apprehended for a period of two and one-half years after the burglary. The third man was described by the sheriff, who said that Dyba resembled the man. Another witness, one John Buchanan saw the individual who the sheriff had apprehended while the former was in custody. He was able to view the side of the man's face. From this, he said that Dyba resembled the individual that he had seen.

Various material, including jackets, gloves, a walkie talkie, together with two bags of money were recovered. Evidence at the bank shows the means of entry to have involved the removal of a lock from the front door and the cutting of a hole in the vault door. There was a wrecking bar and other tools. A hose led from the bank's water supply to the safe. The safe had been filled with water prior to its being opened. This was so that the money would not be burned as a result of using the acetylene torch. The electrical wires had been cut.

The testimony of Kirkland was that he, together with Theodore Paul Bates and one Robert Krogness, had registered at a motel in Oklahoma City, seven or eight days be-

fore the bank burglary. They met Dyba at the Oklahoma City airport on January 28, 1973. All four drove to Meeker on the same evening. Krogness and Bates broke into a garage a block from the bank and carried away an oxygen tank and an acetylene torch. The stolen equipment was taken to the bank and Dyba and Kirkland entered it. Bates took a position on the roof and Krogness took his position outside of town. Dyba cut a hole in the top of the safe so that the money could be removed.

Dyba was not apprehended for some two and one-half years after the commission of the offense. He was discovered in Billings, Montana, his home. He was first tried in the United States District Court for the Western District of Oklahoma on October 23, 1975. Due to the fact that the jury was unable to agree, a mistrial was declared. Very soon after this, on December 8, 1975, the case was tried a second time. After extensive deliberations, the jury found him guilty of Count I.

With regard to the effort on the part of the sheriff at Meeker, Oklahoma to arrest the person who was believed to be Dyba and the shooting which occurred incident to his escape, the evidence shows that although Dyba had a number of scars on his person, it was not certain from the appearance of these that any one of them was caused by a bullet wound.

Dyba offered evidence that on the day of the burglary he was in his home in Billings, Montana. He took the witness stand and testified to this, and also testified that he had never been shot. Medical evidence offered on his behalf was to the effect that the scars on his body were probably not caused by a gunshot.

## I.

DID THE USE OF THE WORD "BURGLARY" IN THE INDICTMENT INSTEAD OF THE WORD "LARCENY" MISLEAD THE DEFENDANT OR FAIL TO APPRISE HIM AS TO THE NATURE OF THE CHARGE?

The allegedly defective indictment charged: burglary of monies in the care,

custody, control or possession of said bank in violation of 18 U.S.C. Section 2113(a). It correctly alleged the date, the place, the name of the bank, the entry of the bank. The deficiency is its failure to correctly describe the offense committed within the bank, namely larceny of monies. Instead it said burglary of monies. The statute prohibits the entry of a bank with intent to commit in such a bank "any felony affecting such bank or such savings and loan association in violation of any statute of the United States."

It seems clear that the entry was with intent to commit larceny of the monies in the care, custody, control and possession of the bank rather than burglary of the monies since the burglary is the unlawful entry. The government concedes that there cannot be a burglary of monies. At the same time, it maintains that the language serves to notify the defendant that he was being charged with entering the bank with intent to steal the bank's money and that this was sufficient.

The thrust of the offense charged was unlawful entry. Use of the term "burglary" imported an unlawful entry with intent to steal since monies were mentioned. Also, the indictment alleged violation of Title 18 U.S.C. Section 2113(a), which although it does not mention burglary, does say that whoever enters or attempts to enter any bank, etc., with intent to commit in such a bank any felony affecting such bank in violation of any statute of the United States, is guilty of a violation of said section.

A study of the indictment convinces us that it provided the accused with adequate notice of the offense charged.

Rule 52(a), F.R.Crim.P., furnishes an initial guide to resolving this issue. In speaking of harmless error it states: "Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded."

The cases also provide perspective. The opinion in *Clay v. United States*, 326 F.2d

196, 198 (10th Cir. 1963), *cert. denied*, 377 U.S. 1000, 84 S.Ct. 1930, 12 L.Ed.2d 1050, declares that "[t]he sufficiency of an indictment or information is to be determined by practical rather than technical considerations."

*Robbins v. United States*, 476 F.2d 26, 30 (10th Cir. 1973), stresses the importance of apprising the accused of the nature of the offense so that he may adequately prepare a defense. *See also United States v. Mason*, 440 F.2d 1293, 1296 (10th Cir. 1971). In *Mason* the defendants were charged with entering a building which was partly a savings and loan association with intent to commit larceny therein. The argument was that the word "therein" referred to the building generally and not to the part that was occupied by the credit union. This court conceded that the indictment was not a model of clarity, but it concluded nonetheless that it sufficiently described the elements of the offense and apprised the accused that he was charged with entering a building with intent to commit larceny in a savings and loan association which occupied part of it.

*U.S. v. Thompson*, 356 F.2d 216 (2d Cir. 1965), was not dissimilar from this case on its facts. *Thompson* was a breaking and entering case also in which the defendant was accused of entering a bank with intent to commit a felony, the "taking of money." There was a failure to include the phrase "intent to steal." It was concluded by the Second Circuit that the defendant had not been prejudiced, for as in our case, the trial was carried out on the understanding that the felony affecting the bank referred to in the indictment was the offense specified in the statute, Section 2113.

We are not suggesting that this indictment is any model of good pleading. Nevertheless, it is easy to see how a typographical mistake such as is present here could happen. The only question we need consider is whether the defendant was prejudiced by it. Since it clearly identifies the transaction and also describes the offense sufficiently to apprise the accused of its nature, we conclude that it was legally sufficient.

## II.

### WHETHER THE GIVING OF THE ALLEN CHARGE WAS PREJUDICIAL EITHER IN FORM OR DUE TO THE TIME WHEN IT WAS GIVEN

■ The jury started deliberations on December 10, 1975 and adjourned at 5:33 p. m. that day. Deliberations were resumed at 9:00 a. m. the next day, but at 11:17 a. m. report was made to the court that the jury was deadlocked. Then the court gave the so-called Allen charge which is claimed to have been coercive and prejudicial.

The emphasis in the controverted Allen charge given by the court was the importance of the case, expense involved in retrying it, probability that there would not be better evidence presented to another jury, and a need for consultation consistent with exercise of their individual judgments.[1]

1. One part of the charge considered by appellant to be prejudicial is as follows:

   If much the greater number of you is for conviction, each dissenting juror ought to consider whether a doubt in his or her mind is a reasonable one, since it makes no effective impression upon the minds of so many of the others equally as honest, equally as conscientious as their fellow jurors, who bear the same responsibility, serving under the same oath, and having heard the same evidence with, we may assume, the same attention and equal desire to arrive at the truth in this matter.

   On the other hand, if a majority or even a lesser number of you are for acquittal, other jurors ought seriously to ask themselves again, and most thoroughly, thoughtfully, whether they do not have reason to doubt the correctness of their judgment, which is not concurred in by man [sic] of their fellow jurors, and whether they should not distrust the weight and the effect of the evidence which fails to convince the minds of several of their fellows beyond a reasonable doubt.

   . . . . .

   Remember at all times that no juror is expected to yield his conscientious conviction that he or she may have as to the weight and effect of the evidence, but remember also that after full deliberation

Appellate courts have regarded the Allen charge with concern and apprehension since its inception in *Allen v. United States*, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896). The question is whether it was coercive so as to influence the jury to reach a particular verdict.

Although this court has been guarded about its use we have not disapproved it. *See, for example, Berger v. United States*, 62 F.2d 438 (1932); *U.S. v. Winn*, 411 F.2d 415 (1969); *U.S. v. Wynn*, 415 F.2d 135 (1969); *Munroe v. U.S.*, 424 F.2d 243 (1970); *U.S. v. Abbadessa*, 470 F.2d 1333 (1972); and *U.S. v. Smith*, 521 F.2d 374 (1975).

The terms of the particular charge here given were not obnoxious. The question remains whether it is proper to give it after the jury has reported inability to reach a verdict. This was considered in *United States v. Wynn, supra*. There the court, while expressing disapproval of its use after the announcement of inability to agree, nevertheless refrained from a reversal of the case. It stated that it was a proper exercise of the court's power to guide the jury in reaching a fair and impartial verdict provided it made clear that the jurors were not to give up their conscientiously held convictions. *U.S. v. Wynn, supra*, at 136–37, *quoting U.S. v. Winn, supra*, at 416. Judge Murrah writing for the court called attention to the desirability of giving the charge prior to the development of the emergency.

Subsequent decisions have taken the same approach. *See United States v. Abbadessa, supra*, and *Munroe v. U.S., supra*, wherein the court said:

> To this date this court has not, as a general rule, condemned the giving of supplemental jury instructions or struck down the giving of the so-called "Allen" type instruction. The court has made a case by case examination to determine whether the taint of coercion was present.

424 F.2d at 246. In *Munroe* the court considered fully the elements to be weighed and said that these should include any colloquy between the judge and the jury foreman, circumstances surrounding the giving of the instruction, and consideration of the American Bar Association Standards on Criminal Justice Relating to Trial by Jury. Significantly the court did not disapprove giving the instruction after the jury had commenced deliberating. *United States v. Smith, supra*, took the same line.

In the present case the circumstances are not shown to have been prejudicial or coercive. The closest it came to this was in subsequent statements of the court telling the jury to take its time and that they could work all day Saturday and also all day Sunday, and advising them that they should bring their personal items such as night clothes and toilet articles on Friday.

We deem it significant, first, that there were no objections registered to the Allen charge or any of the subsequent statements of the court. We conclude that the giving of the charge and the subsequent comments to the jury were not prejudicial and did not constitute plain error.

## III.

### WAS THE EVIDENCE SUFFICIENT?

■ We conclude that there is ample evidence to support the judgment. There was both direct and circumstantial evidence. Kirkland, an accomplice, testified for the government. His testimony was that Dyba was part of a scheme and it was he who operated the stolen tools. Even if the testimony of this witness had been uncorroborated, it would be, standing alone, legally sufficient. But it is corroborated by the testimony of Sheriff Kinnear and that of John Buchanan. Moreover, there was flight. Dyba was in hiding for two and one-half years. He admitted that he was aware that a warrant had issued for his arrest.

The jury had an opportunity to judge and evaluate his explanation as to why, not-

and consideration of all the evidence in the case, it is your duty to agree upon

a verdict if you do so without violence or harm to your individual judgment.

withstanding his knowledge that the warrant was out, he continued in hiding for the long period of time. This fact plus the direct testimony was sufficient.

## IV.

### WHETHER THE U.S. ATTORNEY WAS GUILTY OF PREJUDICIAL MISCONDUCT IN COMMENTING ON THE FAILURE OF DYBA TO CALL CERTAIN WITNESSES

■ The important factor here is that there was not a failure of the accused to testify. Hence the comment of the government could not be construed as referring to him. Apart from comments about the accused, the failure of the party in litigation to call witnesses who have knowledge of facts raises an inference that if the witnesses had been called their testimony would have been harmful or injurious to the accused. The validity of such comments has been recognized where the circumstances are proper.[2]

It is noteworthy that the trial court cautioned the jury to disregard the comment. In that instruction the jury was reminded that the burden of proof was on the government and that the defendant is not required to produce any evidence.

## V.

### WAS IT ERROR FOR THE TRIAL COURT TO REFUSE TO ORDER DISCLOSURE OF THE INFORMANT'S IDENTITY?

■ The Supreme Court considered in *Roviaro v. United States*, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957), the question which is now before us. There the Supreme Court held that because of the special circumstances disclosure was required. There is, however, a countervailing factor to be weighed and that is the value to the government of having a free flow of information concerning the violation of laws and the whereabouts of the violators. This was recognized in *Roviaro*. In that opinion the Court said that there was no fixed rule as to justifiable disclosure or refusal to disclose. It is further said that resolving the problem required a balancing of public interest against the individual's right to prepare a defense.

■ Here the informer did not, as far as we know, testify. In fact, the defendant had only suspicions as to the informant's identity. His belief was that Judy Kirkland, the wife of Prentiss Kirkland, had furnished the information. He argued that possession of this fact would have discredited Kirkland, the principal witness. If it was Kirkland and his wife, the opportunity to discredit would not weigh so heavily since the government was not dependent on the testimony of Kirkland. There was other evidence, both direct and circumstantial. In the light of this, we must determine that the trial court's ruling was proper. *See United States v. Herbert*, 502 F.2d 890 (10th Cir. 1974), *cert. denied*, 420 U.S. 931, 95 S.Ct. 1134, 43 L.Ed.2d 403 (1975); and *Garcia v. United States*, 373 F.2d 806 (10th Cir. 1967).

Accordingly, the judgment of the district court is affirmed.

2. *See United States v. Keller*, 512 F.2d 182, 186 (3rd Cir. 1975); *United States v. Grammer*, 513 F.2d 673 (9th Cir. 1975); *United States v. Hager*, 505 F.2d 737 (8th Cir. 1974); *United States v. Thompson*, 490 F.2d 1218, 1221 (8th Cir. 1974); *United States v. Lipton*, 467 F.2d 1161 (2 Cir. 1972), *cert. denied*, 410 U.S. 927, 93 S.Ct. 1358, 35 L.Ed.2d 587.