STATE of Utah, Plaintiff and Respondent,

v.

Ceasar LACTOD, Defendant and Appellant.

No. 860337–CA.

Court of Appeals of Utah.

Sept. 2, 1988.

D. Aron Stanton & Associates, D. Aron Stanton, Dixon Hindley, Rex B. Bushman (argued), Salt Lake City, for defendant and appellant.

David L. Wilkinson, Atty. Gen., Kimberly K. Hornak (argued), Asst. Atty. Gen., for plaintiff and respondent.

Before BENCH, GARFF and JACKSON, JJ.

## OPINION

GARFF, Judge:

Defendant Ceasar Lactod was convicted of sexual abuse of a child, a second degree felony, on November 21, 1986. He seeks reversal of his conviction or a declaration of mistrial. We affirm.

Tom Ainge and Susan Lactod are parents of H., the eleven-year-old victim, and three other children. During the course of their relationship, they married, divorced, and remarried. Their turbulent second marriage ended when Susan left Tom to marry defendant. At the time of the alleged sexual abuse, Tom had custody of the children.

On December 23, 1985, H. and the other children visited Susan and defendant at defendant's apartment. Because Susan and defendant lacked furniture, they had placed mattresses in the living room of the two-bedroom apartment, using it as a bedroom, and were using the two bedrooms as storage rooms.

H. testified that during this visit, Susan went to the store, leaving the children alone with defendant in the apartment. While they were playing in one of the storage bedrooms, defendant, who was alone in the living room/bedroom, called to H. and asked her to get into bed with him. Defendant was wearing underwear and H. was wearing a nightgown and underwear. Once H. was in bed, defendant touched her breasts and her "privates" underneath her underwear for approximately ten minutes until Susan returned home.

On February 27, 1986, H. attended a presentation on sexual abuse at school. After the presentation, she reported the December incident to her teacher.

At trial, H. was the only prosecution witness to directly testify of the alleged offense. Susan testified for defendant, contradicting H.'s testimony, and stated that she had not left to go shopping but had remained at home to cook a turkey dinner. She maintained that defendant was never left alone with H. and the alleged incident did not happen.

The trial court did not allow defendant's counsel to introduce certain evidence regarding the extent of hostility that Tom Ainge may have had toward defendant.

After the evidence was presented, the jury deliberated for five hours without reaching a verdict. The trial court then delivered a verdict-urging instruction to the jury. Approximately one hour and fifteen minutes later, the jury found defendant guilty as charged.

Defendant raises the following issues on appeal: (1) whether the trial court erroneously omitted evidence of Tom's bias from the trial; (2) whether there was sufficient evidence to convict defendant; and (3) whether the supplemental verdict-urging instruction to the jury was reversible error.

## I

### Exclusion of Proffered Evidence

We first address whether the trial court erroneously prevented defendant's counsel from introducing testimony regarding Tom Ainge's bias against defendant during the trial.

Full exposure of a witness's bias or prejudice is essential if a jury is to be able to fully assess the existence and extent of the witness's bias. *State v. Leonard,* 707 P.2d 650, 656 (Utah 1985). Because a witness's interest is a matter which the jury must weigh against his credibility, *State v. Maestas,* 564 P.2d 1386, 1388 (Utah 1977), the Utah Supreme Court has been careful to allow wide latitude for examination into the

areas of bias and motive. *State v. Rammel*, 721 P.2d 498, 499 (Utah 1986).

However, this latitude is not unlimited. The trial judge has discretion to limit examination "to preclude repetitive and unduly harassing interrogation," *Leonard*, 707 P.2d at 656 (quoting *Davis v. Alaska*, 415 U.S. 308, 316, 94 S.Ct. 1105, 1110, 39 L.Ed. 2d 347 (1974)), or to prevent parties from embarking on "fishing expeditions." *State v. Lairby*, 699 P.2d 1187, 1195 (Utah 1984). Furthermore, when challenged, the examiner must establish the relevance of a proposed line of inquiry. Failure to do so justifies the trial court's refusal to permit the questioner to proceed. *State v. Miller*, 727 P.2d 203, 205 (Utah 1986).

Defendant's theory of the case is that Tom persuaded H. to fabricate the incident because of his hostility toward defendant and his motivation to try to regain Susan by putting defendant into prison. Defendant contends that H., as an impressionable eleven-year-old living with Tom and motivated by a desire to see her parents come back together, had the requisite emotional state to be influenced by Tom.

Defendant's counsel, Mr. Bushman, asserts that the trial judge erred by refusing to allow him to introduce certain testimony regarding Tom's hostility toward defendant and concerning H.'s home life which would support this theory. He attempted to explore the circumstances surrounding the two divorces between Susan and Tom and the reaction and feelings the children had toward these events in order to suggest a motive for H.'s accusations. The trial judge questioned the relevance of the proposed line of questioning and dismissed the jury. Following a discussion of the proposed testimony, the judge[1] and counsel engaged in the following discussion:

> Mr. Bushman: Your Honor, we would like to establish three things in our defense with regard to the girl's testimony. Now, we believe we have enough—we can get enough conflicts to add some reasonable doubt to the man's guilt here. But we also feel

that it is necessary for us to give some reasoning behind why the girl is behaving like she is. Now, we do have several theories, but if we are unable to lay before the court the foundation of those matters then we will simply be unable to even imply those problems exist. I'll mention that [sic] facts that we are looking for, your Honor.

> The Court: I don't think there's any question that the facts exist. The jury knows about that. Mr. Draney [prosecutor] probably would love to get that stuff in, including the prior custody determinations, which you are asking me to let in, whether you realize that or not. We start delving into background and problems between Susan and Tom and we are going to bring in divorce files if counsel choses [sic] to bring them in and find out there was another man the first time separate from Mr. Lactod, and there was a court determination of fitness for custody against this lady here. Do we want that in there? I don't think it's relevant, any of it. I think all it can do is just dirty this whole thing up. It's certainly not going to help Susan a bit.

> . . . .

> Mr. Bushman: In fact, our evidence is as stated by Susan Lactod that he [Tom Ainge] has an uncontrollable rage about the defendant, and would be willing to help in any matter to discredit the witness, and the girl [H.] lives with the father.

> The Court: Are you trying to say that he is instructing the witness on how to testify?

> Mr. Bushman: As a matter of fact, we have testimony by the son or been stated [sic] by that son that that in fact exists.

> The Court: Bring the son on. That's direct evidence.

> Mr. Bushman: We are getting to that, but I have to establish a foundation.

> The Court: All this other stuff you are trying to get out of Susan is not only

[1] The same trial judge had presided over Tom and Susan Ainge's prior divorce actions, so was well aware of the factual background defendant's counsel wished to introduce.

irrelevant, the way I see it it's extremely damaging to Susan personally. It's stuff that she has lived through. She doesn't need to relive it again in front of a bunch of strangers. I don't see how it's going to help you.

. . . .

The Court: [To Susan] Well, I think what's going to happen here is you are going to come out not looking very good. I'm probably building all kind of error in this record right now, but I know you a little bit, right? We have been down the road apiece together, and I don't think it's healthy to go down it again, because if we open it up Mr. Draney is free to go back and get everything five years ago, six years ago when the trouble started, and bring all that stuff in. I don't think that's good for you.

The Witness [Susan]: Okay.

Mr. Bushman: Your Honor, you have to be aware of the fact that I am, begging the court's pardon, but I have been introduced to these facts from my client [defendant] and his wife [Susan]. Now, where there's been a problem with character, I see it only from her point of view. If you feel that this is damaging to her in that regard then I'll accept your recommendation and we will skip this and we will get on with the other matters.

. . . .

The Witness: May I ask you something, Judge? I think more than anything we wanted to establish the fact from my side, my point of view how I have been maligned, and this could possibly be another one of my ex-husband's tactics to try to get me back, which he tried to do many times.

The Court: I can see the tactics, what you are saying, but rather than you talking about a lot of old stuff, bring in direct evidence that bears on [H.]. That's what we have got to bring in here. That's what Mr. Draney is objecting to, and that's what I am sustaining.

Bushman, after acquiescing to the court's recommendation, made no further attempt to establish the relevance of this line of questioning. The court ruled that it was irrelevant and Bushman took no exception to it.

The trial judge was within his discretion in precluding what he determined to be discrediting and potentially harassing interrogation. Bushman, instead of further attempting to establish the relevance of the proposed line of inquiry, accepted the ruling, and did not present evidence which the judge had indicated would be admissible, the son's testimony. For these reasons, we conclude that the court was within its discretion in refusing to admit the proffered testimony.

■ In further consideration of this issue, "[c]ourts have found no prejudice where information that may be brought out by further questioning was already before the jury either from the testimony of others or by implication from the witness' own testimony." *Maestas*, 564 P.2d at 1389.

The record indicates that during the trial, defendant's counsel, Bushman, cross-examined Tom concerning his hostility and bias toward defendant as follows:

Q  And how did you feel about that when you first heard about Mr. Lactod?

A  At the present time I was angry; but I told her [Susan] at that time there would be no divorce, that we had to keep the children together.

Q  What did she respond to you?

A  Sir, I really can't say, because I don't remember.

Q  Did a divorce occur subsequent to that time?

A  Subsequently it did lead to a divorce, yes.

Q  Did you feel that Mr. Lactod was part of the reason for that?

A  Yes, sir. I definitely do.

Q  And is it my understanding that you didn't want a divorce?

A  This is my—your understanding is correct, sir. I did not at that time want a divorce.

Q Did you have harsh feelings for Mr. Lactod because of that?

A I didn't personally know the man; but for breaking up a family, yes, sir. My feelings were quite like any husband's that's losing his wife. You don't realize it if you haven't gone through it.

Q Had you had a separation prior to that time with Susan?

A We had been divorced prior to that and got back together and remarried.

Mr. Bushman: I have no further questions at this time, your Honor.

We will not set aside a verdict because evidence may have been erroneously excluded, unless that evidence would probably have had a substantial influence in bringing about a different verdict. Where it is unlikely that the excluded testimony prejudiced defendant's rights in a substantial manner, the error is harmless and the verdict is not subject to reversal. *See Rammel*, 721 P.2d at 499–500. This testimony shows that Tom had strong feelings against defendant, thus providing a basis for presenting defendant's theory of the case to the jury. Therefore, even had the proffered testimony been erroneously excluded, the error would have been harmless because the additional testimony would not have had a substantial influence in bringing about a different verdict. *See Lairby*, 699 P.2d at 1195.

## II

### *Sufficiency of Evidence*

■ The test for reviewing sufficiency of the evidence is well settled:

[W]e review the evidence and all inferences which may reasonably be drawn from it in the light most favorable to the verdict of the jury. We reverse a jury conviction for insufficient evidence only when the evidence, so viewed, is sufficiently inconclusive or inherently improbable that reasonable minds must have entertained a reasonable doubt that the defendant committed the crime of which he was convicted.

*Lairby*, 699 P.2d at 1207 (quoting *State v. Petree*, 659 P.2d 443, 444 (Utah 1983)); *see also State v. Gabaldon*, 735 P.2d 410, 412 (Utah Ct.App.1987).

Defendant was convicted of sexual abuse of a child, a second degree felony, in violation of Utah Code Ann. § 76–5–404.1(1) (1986). According to the statute,

[a] person commits sexual abuse of a child if, under circumstances not amounting to rape of a child, object rape of a child, or sodomy upon a child or an attempt to commit any of these offenses, the actor touches the anus, buttocks, or genitalia of a child who is under the age of 14, or touches the breast of a female child who is under the age of 14, or otherwise takes indecent liberties with a child, ... with the intent to arouse or gratify the sexual desire of any person regardless of the sex of any participant.

There is evidence on the record that the victim was nine years old at the time of the alleged incident, and that defendant called her into bed with him and engaged in touching her genitals and breasts. Defendant argues that this evidence is insufficient to sustain his conviction because the young victim gave confused testimony on nonessential details, such as whether the offense occurred in the bedroom or the living room, whether her mother was at home or at the store at the time the alleged offense occurred, and whether the other children were present in the same room or not.

It is not this court's duty to measure conflicting evidence or the credibility of witnesses. That responsibility belongs strictly to the trier of fact. *Lairby*, 699 P.2d at 1207. " 'It is the exclusive function of the jury to weigh the evidence and to determine the credibility of the witnesses.' So long as there is some evidence, including reasonable inferences, from which findings of all the requisite elements of the crime can reasonably be made, our inquiry stops." *State v. Booker*, 709 P.2d 342, 345 (Utah 1985) (quoting *State v. Lamm*, 606 P.2d 229, 231 (Utah 1980)).

The jury apparently chose to believe H.'s testimony, despite its contradictions, rather than testimony proffered on behalf of de-

fendant. Because there is admissible evidence in the record from which findings of all the requisite elements of the crime can be made, we do not substitute our judgment for that of the jury. The jury is in the best position to give proper weight to the peripheral nature of the contradictory testimony and to assess the validity of the young child's recollections. We find that the evidence was sufficiently conclusive to eliminate any reasonable doubt that defendant was guilty. Therefore, we find this argument to be without merit.

### III

*Propriety of Verdict–Urging Instruction*

After the evidence was presented, the jury was excused to deliberate. Approximately five hours later, the jury indicated that it was having trouble reaching a verdict. The trial judge requested that the jury return to the courtroom, and, then, without informing counsel beforehand, gave it the following verdict-urging instruction:

> I need to have a chat with you folks. I understand you are having a difficult time in there. I'm getting nods of heads yes. I want to encourage you as best you can to reach some kind of agreement, and the reason is simple. If you don't reach an agreement and the jury hangs up and cannot come to any kind of agreement we get to send you folks home and reschedule this whole thing and start over again. Now, I'm sure you don't want to do that. I'm sure we don't want to do that either, because one problem is I'm only going to be here another six or eight weeks and we don't have another day to do this case. We would very much like to get a settlement out of this matter if we can. Now, you add up the time we have all got involved in this case and we have got two or three weeks into it figuring all our individual time. I want you to go back and give it another effort. Be open minded, understanding. Be compromising as best you can without surrendering your honest and true feelings, because we don't want you to go in there and let everybody walk all over you. But on the other hand if there's any way possible to reach an agreement let us know. If not then I'm not going to let you go too much longer. But I think if you give it another shot maybe you can. It's worked before on lots of other jurys [sic], and I hope it will tonight because I certainly don't want to throw away this day. You folks have put too much time and effort into it, as well as these folks out here whose day it is. So if you folks will go back to the jury room and take a few deep breaths and relax and start over again, I would really appreciate it. Okay?

Defendant's counsel did not object to this instruction either before or after it was given. Approximately one hour and fifteen minutes after resuming deliberations, the jury found defendant guilty as charged.

Defendant now asserts that this instruction was improperly given to the deadlocked jury, constituting reversible error. The State, however, argues that defendant should be precluded from raising the propriety of the instruction on appeal because defendant failed to object to the instruction prior to the time it was given, pursuant to Utah R.Crim.P. 19(c) (1982), which provides that

> [n]o party may assign as error any portion of the charge or omission therefrom unless he objects thereto before the jury is instructed, stating distinctly the matter to which he objects and the ground of his objection. Notwithstanding a party's failure to object, error may be assigned to instructions to avoid a manifest injustice.

In *State v. Medina,* 738 P.2d 1021 (Utah 1987), the Utah Supreme Court did not address the propriety of a similar verdict-urging instruction because counsel had failed to preserve the issue for appeal by objecting to the instruction. In *Medina,* the court distributed copies of the proposed instruction to counsel prior to reading the charge to the jury, asking if either side had any objection to the proposed instruction. Neither side objected, and defense counsel stated, "I have no objection. I have read it." *Id.* at 1022. The court then read the

charge to the jury, which, approximately two hours later, returned a verdict of guilty. The Utah Supreme Court refused to address the issue because "defense counsel not only failed to object to the proposed instruction, but ... affirmatively stated that after reading it, she had 'no objection.'" *Id.* at 1023.

In *State v. Kotz*, 758 P.2d 463 (Utah Ct.App.1988), the trial court gave an oral verdict-urging instruction to the jury after first describing the content of the proposed instruction to counsel. Defense counsel failed to object either to the wording of the instruction or to the fact that it was given orally without first submitting it to counsel pursuant to Utah R.Crim.P. 19(a) (1982). The Utah Court of Appeals ruled that, under these circumstances, defendant was precluded from raising the issue on appeal.

In the present situation, defendant was not forewarned that the trial court was about to issue a verdict-urging instruction and had no opportunity to know of or object to the allegedly harmful portion of the instruction until after it was given to the jury. Where counsel is not aware of the contents of such an instruction, failure to object to it prior to its being given to the jury should not bar consideration of the charge on appeal. The Montana Supreme Court, under similar circumstances, found that:

> defendant had no opportunity to object to the giving of the instruction before it was given....
>
> Defendant did not know of the harmful portion of the instruction until after it was given and of course it was then too late to make an objection. The harm had already been done.

*State v. Randall*, 137 Mont. 534, 353 P.2d 1054, 1058 (1960).

Therefore, under the manifest error exception to Rule 19(c), we will determine whether any form of a verdict-urging instruction is permissible, and, if so, whether the charge given below was acceptable. *See Burroughs v. United States*, 365 F.2d 431, 434 (10th Cir.1966).

■ The United States Supreme Court approved a similar supplemental verdict-urging instruction in *Allen v. United States*, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896),[2] hence, such instructions are often referred to as *"Allen* charges." Since 1896, however, "many courts have expressed concern about the continued propriety of the instruction because of its perceived tendency to pressure jurors to give up their sincere convictions simply because a majority takes a different view." *Medina*, 738 P.2d at 1022 n. 1.; *see also United States v. Dyba*, 554 F.2d 417, 421 (10th Cir.1977). This is an issue of first impression in Utah because the *Medina* court did not address the propriety of an *Allen* charge on its merits.

Some jurisdictions have abandoned the *Allen* charge. *People v. Gainer*, 19 Cal.3d 835, 566 P.2d 997, 1002–03, 139 Cal.Rptr. 861, 866–67 (1977). However, other jurisdictions have not disapproved it, but have limited it. *Id.* The Tenth Circuit has been guarded about its use, *Dyba*, 554 F.2d at 421, and has "cautiously approved [it] in appropriate circumstances." *United States v. Winn*, 411 F.2d 415, 416 (10th Cir.1969). It has found that such a charge is a "proper exercise of the court's power to guide the jury in reaching a fair and

---

**2.** The propriety of verdict-urging, or "dynamite" instructions was addressed by the United States Supreme Court in *Allen v. United States*, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896). The Court approved an instruction which, in substance, said "that in a large proportion of cases absolute certainty could not be expected; that, although the verdict must be the verdict of each individual juror, and not a mere acquiescence in the conclusion of his fellows, yet they should examine the question submitted with candor, and with a proper regard and deference to the opinions of each other; that it was their duty to decide the case if they could conscientiously do

so; that they should listen, with a disposition to be convinced, to each other's arguments; that, if much the larger number were for conviction, a dissenting juror should consider whether his doubt was a reasonable one which made no impression upon the minds of so many men, equally honest, equally intelligent with himself. If, upon the other hand, the majority were for acquittal, the minority ought to ask themselves whether they might not reasonably doubt the correctness of a judgment which was not concurred in by the majority." *Allen v. United States*, 164 U.S. 492, 17 S.Ct. 154, 157, 41 L.Ed. 528 (1896).

impartial verdict provided it made clear that the jurors were not to give up their conscientiously held convictions." *Dyba,* 554 F.2d at 421 (citing *United States v. Wynn,* 415 F.2d 135, 136–37 (10th Cir. 1969)).

The American Bar Association has similarly recommended discretion in giving a supplemental verdict-urging instruction to a deadlocked jury. It has suggested that such instructions be given before the jury retires for deliberation, and, later, if the jury is unable to agree, that the court may require the jury to continue its deliberation and may give or repeat an appropriate instruction. *American Bar Association Standards Relating to Trial By Jury,* § 5.4.[3] *See also Dyba,* 554 F.2d at 421; *Burroughs,* 365 F.2d at 434.

Significantly, in January 1988, the United States Supreme Court upheld a verdict-urging instruction on the grounds that it was not coercive "in its context and under all the circumstances." *Lowenfield v. Phelps,* —— U.S. ——, ——, 108 S.Ct. 546, 550, 98 L.Ed.2d 568 (1988). The Court noted that "the use of a supplemental charge has long been sanctioned" under *Allen, id.* at ——, 108 S.Ct. at 550, and that

> It is a well settled proposition that when the court is informed by a jury that they are having difficulty in agreeing, it is not error for the court to impress upon them the importance of the case, urge them to come to agreement, and send them back for further deliberation.

*Id.* at ——, 108 S.Ct. at 550 (quoting *State v. Lowenfield,* 495 So.2d 1245 (La.1985)).

We, likewise, uphold the non-coercive use of *Allen* charges because we believe such charges to be a reasonable and proper exercise of the court's power to guide the jury to a fair and impartial verdict. We also recognize the other legitimate purposes served by such a charge, namely, "the avoidance of the societal costs of a retrial" both in time and money, *id.,* —— U.S. at ——, 108 S.Ct. at 551, and the "possible loss of evidence that a new trial would entail." *Id.* at ——, 108 S.Ct. at 558 (Marshall, J., dissenting).

*Lowenfield* requires us to "consider the supplemental charge given by the trial court 'in its context and under all the circumstances.'" *Id.* at ——, 108 S.Ct. at 550 (quoting *Jenkins v. United States,* 380 U.S. 445, 446, 85 S.Ct. 1059, 1060, 13 L.Ed. 2d 957 (1965) (per curiam)). Thus, we consider whether the language of the supplemental charge can properly be said to be coercive, and whether it is coercive under the specific circumstances of the case.

We note that there is no prescribed "ritual of words" indicating whether the language of an *Allen* charge is coercive. *Winn,* 411 F.2d at 417. The judge may appropriately admonish the jury to "deliberate together in an atmosphere of mutual deference and respect giving due consideration to the views of others in the knowledge that in the end their verdict must reflect the composite views of all." *Burroughs,* 365 F.2d at 434. He may counter-

---

3. The ABA-recommended standards for verdict-urging instructions read as follows:

5.4 Length of deliberations; deadlocked jury.

(a) Before the jury retires for deliberation, the court may give an instruction which informs the jury:

(i) that in order to return a verdict, each juror must agree thereto;

(ii) that jurors have a duty to consult with one another and to deliberate with a view to reaching an agreement, if it can be done without violence to individual judgment;

(iii) that each juror must decide the case for himself, but only after an impartial consideration of the evidence with his fellow jurors;

(iv) that in the course of deliberations, a juror should not hesitate to reexamine his own views and change his opinion convinced that it is erroneous; and

(v) that no juror should surrender his honest conviction as to the weight or effect of the evidence solely because of the opinion of his fellow jurors, or for the mere purpose of returning a verdict.

(b) If it appears to the court that the jury has been unable to agree, the court may require the jury to continue their deliberations and may give or repeat an instruction as provided in subsection (a). The court shall not require or threaten to require the jury to deliberate for an unreasonable length of time or for unreasonable intervals.

(c) The jury may be discharged without having agreed upon a verdict if it appears that there is no reasonable probability of agreement.

ABA Standards Relating to Trial By Jury § 5.4.

balance such an admonition with a charge to the jury members to not give up their conscientiously held opinions, *see Dyba,* 554 F.2d at 421; *Winn,* 411 F.2d at 417; *Burroughs,* 365 F.2d at 434, and may also remind the jurors of the presumption of defendant's innocence and the burden of proof imposed upon the state. *Winn,* 411 F.2d at 417.

■ However, there are certain inherently coercive ideas which should not be included in an *Allen* charge. The United States Supreme Court expressly disapproved an instruction which stated, in part, that "[y]ou have got to reach a decision in this case." *Jenkins,* 380 U.S. at 446, 85 S.Ct. at 1060. It is a misstatement of law that a criminal case must be decided at some time. *Gainer,* 566 P.2d at 1006. Further, the instruction, in the light of the circumstances under which it is given, "should not overemphasize the importance of an agreement, suggest that any juror surrender his independent judgment, or say or do anything from which the jury could possibly infer that the court is indicating anxiety for or demanding some verdict, or subjecting the jury to the hardships of long deliberations." *State v. Thomas,* 86 Ariz. 161, 342 P.2d 197, 200 (1959). While it is well-established that the length of time a jury may be kept together for deliberation is discretionary with the trial judge, he may not coerce the jury into returning a verdict because this amounts to a denial of a fair and impartial jury trial and is, therefore, a denial of due process. *Mills v. Tinsley,* 314 F.2d 311, 313 (10th Cir.1963).

■ In the present case, the trial judge did not tell the jury that it was required to reach a decision. Although he did indicate that he and the jury had invested a substantial amount of time in the case, he was only stating the obvious. He also indicated that he would only be on the bench for another six or eight weeks and didn't have another day to spend on the case,[4] but counterbalanced these comments with the following statements:

> Be compromising as best you can without surrendering your honest and true feelings, because we don't want you to go in there and let everybody walk all over you. But on the other hand if there's any way possible . to reach an agreement let us know. If not then I'm not going to let you go too much longer.

These statements clearly did not force the jurors to reach a decision or to give up their conscientiously held beliefs. As such, we find that the judge's words cannot properly be said to be coercive.

■ If the terms of the charge are not coercive *per se,* then we must consider, under the specific circumstances of the case, whether the charge was proper after the jury had reported an inability to reach a verdict. *See Dyba,* 554 F.2d at 421. Factors which we may consider in assessing coercive effect include "any colloquy between the judge and the jury foreman, circumstances surrounding the giving of the instruction, and consideration of the American Bar Association Standards on Criminal Justice Relating to Trial by Jury." *Id.*

We note the following circumstances in the present case: (1) There were no significant colloquies between the judge and the jury foreman. (2) It is not uncommon for the jury to advise the court that it is deadlocked and, thereafter, agree to a verdict. In the present case, the jury continued to deliberate after receiving the instruction for another hour and fifteen minutes, suggesting that minority jurors did not instantly acquiesce to the majority. (3) The judge did not threaten to or keep the jury deliberating for an unreasonable length of time. (4) The instruction was reasonably within the ABA-recommended standards for verdict-urging instructions.[5]

---

**4.** The *Burroughs* court found that an *Allen* charge was coercive, reversing defendant's conviction, partially because "it is one thing to recall the jury to beseech them to reason together, and it is quite another to entreat them to strive toward a verdict by a certain time." *Bur-* *roughs,* 365 F.2d at 434. However, the instruction in *Burroughs* placed substantially more emphasis on achievement of a verdict by a certain time than the instruction in the present case.

**5.** See footnote 3 for the text of these standards.

Thus, we do not find that these instructions reach the level of coerciveness amounting to a denial of a fair and impartial jury trial. In evaluating the instruction as a whole, taking it in context with the trial itself and the jury's deliberations, we think the jury understood that the judge was not intending to force a verdict one way or the other, but, rather, was merely encouraging the jurors to reach an agreement, if possible.

Therefore, we find no reversible error in the giving of this instruction and affirm defendant's conviction.

BENCH and JACKSON, JJ., concur.