**STATE of Utah, Plaintiff and Appellee,**

v.

**Steven D. CLEMENTS, Defendant and Appellant.**

**No. 971411–CA.**

Court of Appeals of Utah.

Oct. 22, 1998.

Margaret P. Lindsay, Provo, for Appellant.

C. Kay Bryson and Laura Cabanilla, Provo, for Appellee.

Before WILKINS, Associate P.J., and JACKSON and ORME, JJ.

## OPINION

ORME, Judge:

Steven D. Clements appeals from a conviction of driving under the influence of alcohol, a class A misdemeanor, in violation of Utah Code Ann. § 41–6–44(2)(a) (Supp.1998), and having an open container of alcohol in a vehicle, a class C misdemeanor, in violation of Utah Code Ann. § 41–6–44.20(2) (1993).[1] Clements contends the trial court's alleged verdict-urging supplemental jury instruction was impermissibly coercive. We disagree and affirm.

---

1. As a convenience to the reader, and because the provisions in effect at the relevant times do not differ materially from the statutory provisions currently in effect, we cite to the most recent statutory codifications throughout this opinion, unless otherwise noted.

## FACTS

"[W]e review the record facts in a light most favorable to the jury's verdict and recite the facts accordingly." *State v. Brown*, 948 P.2d 337, 339 (Utah 1997). The State charged Clements with driving under the influence of alcohol and an open-container violation after Utah County deputy sheriffs arrested him at a campground in Payson Canyon on May 31, 1996. At trial, the arresting officer testified that, in responding to a report of intoxicated individuals in the campground, he was directed to a Ford Explorer occupied by Clements and a female companion. Clements, who was slumped over the steering wheel, had the good sense to boisterously threaten the officer when the officer first attempted to rouse him. Clements smelled strongly of alcohol, was disoriented, and had difficulty pulling his driver's license from his wallet. Clements stipulated at trial that his breath alcohol content was .157 percent, well over the .08 legal limit. The officer noticed that the keys to the Explorer were in the ignition, and the car radio was playing. When searching the Explorer, the officer found an open bottle of gin on the passenger's side floor.

Clements told the officer that he had drunk two beers and that he and the female passenger "were just going to sleep it off for a few minutes" before driving home. Another officer walked around the vehicle to deal with the passenger. As of when he began his discussion with her, the keys were no longer in the ignition. The passenger initially told the officer that the keys were not in the car. However, the officer later found the keys in the passenger's waistband and she admitted hiding the keys so that Clements would not be arrested. Clements, of course, was arrested, and his case proceeded to trial.

At the close of trial, counsel for both Clements and the State stipulated that the only issue remaining on the driving under the influence charge was whether Clements had physical control of the Explorer when the

deputies confronted him. The trial court instructed the jurors and sent them to deliberate. After about two hours of deliberation, the trial court, acting solely on its own initiative, invited the jury back into the courtroom where the following discussion took place:

THE COURT: We'll go on the record now in the matter of State versus Steven Clements. Both counsel are present, as is Mr. Clements. We have invited the six members of the jury to come into the court. Members of the jury, have you been able to arrive at a verdict? And who is your foreperson?

[JURY FOREPERSON]: Well, they said I would be.

THE COURT: Okay, then. Mr. [foreperson], you are the foreperson, and has the jury been able to arrive at a verdict on each count, sir?

THE COURT [apparently having received a nonverbal negative indication]: Well, it's now 7:30 and the jury has been deliberating approximately two hours. It would be my proposal that we recess at this time. We have this calendar every Wednesday at 1 o'clock.[2] If you can't reach a verdict this evening, that we reconvene at 1 o'clock next Wednesday, and that I handle other cases and other calendar while you're in the jury room. Then you can take as long as you need to arrive at a verdict.

Do you think that will be worthwhile? Or if you think that you're unable to arrive at a verdict at this time, you can tell me that also. If you just don't think you can unanimously agree on a verdict on each count.

[JURY FOREPERSON]: Some of us think we should go back in for two minutes.

THE COURT: All right. Let's do that, then. We will have you brought back out in five minutes, then. If you can't, then we will have to figure out something else to do. I would sincerely hope that you can

2. According to an affidavit submitted by the State, the Fourth Judicial District, where Clements was tried, follows a practice whereby class A misdemeanors occurring in Utah County, but outside of a city with a municipal division of the district court, are filed in the Orem Municipal Division. These cases are heard only on Wednesday afternoons to enable the assigned trial judge to spend the remainder of the week in other municipal departments.

reach a verdict this evening. This is not a complicated case. There's only one real issue here on the one count, and it's either "yes" or "no." You have to make up your minds, folks. So we'll have you brought out again in five minutes, then.

A few minutes later, the jury returned with a verdict of guilty on both counts.

## ISSUE AND STANDARD OF REVIEW

■ This appeal presents the sole issue of whether the trial court's uninvited discourse with the jury constituted a supplemental jury instruction which impermissibly coerced the jury to reach a verdict. "Determining the propriety of jury instructions presents a question of law, which we review under a correction of error standard." *Laws v. Blanding City*, 893 P.2d 1083, 1084 (Utah Ct.App.), *cert. denied*, 910 P.2d 425 (Utah 1995). This standard applies equally to supplemental jury instructions. *See, e.g., State v. Lucero*, 866 P.2d 1, 2–3 (Utah Ct.App. 1993).

## ANALYSIS

■ Clements contends that the trial court's supplemental jury instruction impermissibly coerced the jury to reach a verdict. As first recognized by the United States Supreme Court in *Allen v. United States*, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896), when a jury informs the trial court that they are having difficulty agreeing, the court may underscore the case's importance, urge the jury to reach an agreement, and send them back for further deliberation. *See Lowenfield v. Phelps*, 484 U.S. 231, 236, 108 S.Ct. 546, 550, 98 L.Ed.2d 568 (1988). However, such verdict-urging "*Allen* instructions" will be upheld only if, " 'in [their] context and under all the circumstances,' " they are not coercive. *Id.* at 239, 108 S.Ct. at 551 (quoting *Jenkins v. United States*, 380 U.S. 445, 446, 85 S.Ct. 1059, 1060, 13 L.Ed.2d 957 (1965) (per curiam)). We have followed this reasoning, using a specific analytical scheme

to determine whether an instruction was coercive. *See State v. Lactod*, 761 P.2d 23, 28–32 (Utah Ct.App.1988).

In *Lactod*, we approved the practice of "giving a supplemental verdict-urging instruction to a deadlocked jury" provided such instructions are neither "coercive per se," nor "coercive under the specific circumstances of the case." *Id.* at 30–31. However, we believe *Allen* and the two-tiered *Lactod* analysis are triggered only when the trial court addresses a jury that has announced it is deadlocked or, at a bare minimum, has advised the court it is "having trouble reaching a verdict." *Id.* at 28. *See id.* at 30.

At no time did the jury sitting in Clements's trial indicate that it was deadlocked or having trouble reaching a verdict. Rather, the court, as the evening wore on, called the jury out with the intention of recessing their deliberations and sending the jurors home. Facing scheduling constraints, *see supra* note 2, the trial court informed the jury that it would have them reconvene the following week, when they could take as long as they wanted. Lest they be called back for no reason, the court asked whether the jury was deadlocked. In response, the foreperson requested just a couple more minutes to complete the jury's deliberation. The trial court did not mandate this extra time, nor did it instruct the jury that it had to reach a verdict within this short time frame.[3]

Instructing a deadlocked jury that they must reach a verdict is fundamentally different from simply instructing a nondeadlocked jury that they have to come to some consensus from among the options of (1) returning in one week to deliberate at leisure, (2) letting the court know they were deadlocked, or (3) reaching a verdict. The former type of instruction is subject to the two-tiered coerciveness analysis outlined in *Lactod*, while the latter clearly is not.

Because the jury was not deadlocked, and because the trial court simply accommodated the jury's request for additional deliberation

---

**3.** The jury having raised the prospect of a verdict with just a few more minutes of deliberation, the trial court did express its "sincere[ ] hope that you can reach a verdict this evening." However, this encouragement was offered only in the context of remarks in which the court had earlier suggested a continuance to permit further deliberations and had rather neutrally invited the jury to say so "[i]f you just don't think you can unanimously agree on a verdict on each count."

time without mandating they reach a verdict, the trial court's discussion with the jury is distinguishable from the supplemental jury instructions contemplated by *Lactod*. Accordingly, we find no error in the trial court's comments to the jury and affirm Clements's convictions.[4]

Affirmed.

WILKINS, Associate P.J., and JACKSON, J., concur.

---

4. Clements separately assails the court's comment that "[y]ou have to make up your minds, folks." However, read in its proper context, this remark merely mandated a choice from among the appropriate options enumerated in the preceding paragraph in the body of this opinion and was not a verdict-urging directive.