2008 UT App 224

**STATE of Utah, Plaintiff and Appellee,**

v.

**Russell David HARRY, Defendant and Appellant.**

**No. 20070025–CA.**

Court of Appeals of Utah.

June 12, 2008.

Linda M. Jones and Brenda M. Viera, Salt Lake City, for Appellant.

Mark L. Shurtleff, atty. gen., and Jeffrey S. Gray, asst. atty. gen., Salt Lake City, for Appellee.

Before Judges BENCH, BILLINGS, and McHUGH.

## OPINION

McHUGH, Judge:

¶1 Defendant Russell David Harry appeals his conviction for possession or use of a controlled substance, a third degree felony, *see* Utah Code Ann. § 58–37–8(2)(a)(i) (Supp. 2005). Harry argues that the trial court erred when it delivered a modified *Allen* instruction to a deadlocked jury. We agree. Accordingly, we reverse his felony possession conviction and remand for a new trial.

## BACKGROUND [1]

¶2 Around midnight on September 16, 2005, Utah Highway Patrol Officer Jared Garcia stopped the car driven by Harry when he noticed a cracked windshield, no front license plate, and an expired temporary permit. He conducted field sobriety tests after observing, among other things, Harry's slow speech, heavy breathing, shaking, bloodshot eyes, and dilated pupils. After completing the tests, Officer Garcia concluded that Harry was "unable to safely operate a motor vehicle," placed him under arrest, and performed a pat-down search during which he discovered no contraband or weapons. Officer Garcia testified at trial that he then brought Harry to his patrol car, showed him the "completely empty" backseat, and told him that taking any drugs or paraphernalia to the jail could result in "an extra penalty." The officer also testified that, while conducting an inventory search of Harry's vehicle, he "could see [his patrol car] moving." Upon further investigation, he found a bag on the back seat of the police cruiser, between Harry's immediate right and the door. Officer Garcia then found two additional bags in the back of the police vehicle, one of which contained a white crystal substance that later tested positive for methamphetamine.[2] Officer Garcia also testified that Harry admitted to using methamphetamine earlier that day and trying to hide the bags.[3]

¶3 Harry was ultimately charged with possession or use of a controlled substance, a third degree felony (Count I), *see id.*, and driving under the influence of alcohol or drugs, a class B misdemeanor (Count II), *see* Utah Code Ann. § 41–6a–502 (2005). The jury deliberated for nearly three-and-a-half hours before notifying the trial court that they had reached a decision on the driving under the influence charge but were unable to reach a verdict as to the possession or use of a controlled substance charge.[4] Specifically, the jury foreperson's note read as follows: "We have come to a unanimous decision on Count II. However for Count I we are 7–1 and the jurors is [sic] undecided and will not change."

¶4 The trial court brought the jury into the courtroom and, over defense counsel's objection, gave them a modified, supplemental *Allen* instruction.[5] *See generally Allen v. United States*, 164 U.S. 492, 501, 17 S.Ct. 154, 41 L.Ed. 528 (1896) (providing the substance of the pure *Allen* charge); *United States v. McElhiney*, 275 F.3d 928, 936 (10th Cir.2001) ("An instruction that departs from the pure [*Allen*] charge, whether by omission or embellishment, we call a 'modified' *Allen* instruction."). After the judge delivered this instruction, the jury resumed its deliberations and returned with a guilty verdict on both counts in twenty-six minutes.

---

1. " '[W]e review the record facts in a light most favorable to the jury's verdict and recite the facts accordingly.' " *State v. Clements*, 967 P.2d 957, 958 (Utah Ct.App.1998) (alteration in original) (quoting *State v. Brown*, 948 P.2d 337, 339 (Utah 1997)).

2. After an earlier trial, which ended in a mistrial, the methamphetamine evidence was destroyed.

3. In contrast, Harry testified that he was shifting position because his handcuffs were uncomfortable, causing the movement observed by Officer Garcia, and that he had never seen the bags before the moment Officer Garcia showed them to him.

4. Before the jury returned a verdict, they asked the court to see certain evidence, which request the trial court denied. Specifically, the jury wanted to see (1) a police vehicle similar to Officer Garcia's; (2) the type of shoes and shirts Harry was wearing at the time of his arrest, and whether he was wearing socks; and (3) where Harry's pocket was located.

5. The exact language of the modified *Allen* instruction is found in the text of this opinion. The bracketed numbers indicate the order in which each paragraph was read to the jury.

When the verdict was read, defense counsel requested that the jury be polled, and the court clerk asked each juror, "Were these and are these now your verdicts?" Each juror individually replied, "Yes."

## ISSUE AND STANDARD OF REVIEW

¶ 5 Harry argues that, due to the trial court's delivery of a modified *Allen* instruction after the jury was deadlocked, he was denied a fair trial.[6] We review this issue for correctness. *See State v. Clements*, 967 P.2d 957, 959 (Utah Ct.App.1998).

## ANALYSIS

¶ 6 This court has previously addressed whether a modified *Allen* charge was impermissibly coercive. *See State v. Lactod*, 761 P.2d 23, 29 (Utah Ct.App.1988).[7] In doing so, we noted that " 'many courts have expressed concern about the continued propriety of the [*Allen* ] instruction because of its perceived tendency to pressure jurors to give up their sincere convictions simply because a majority takes a different view.' " *Id.* (quoting *State v. Medina*, 738 P.2d 1021, 1022 n. 1 (Utah 1987)). Nevertheless, this court "uph[e]ld the non-coercive use of *Allen* charges because we believe such charges to be a reasonable and proper exercise of the court's power to guide the jury to a fair and impartial verdict." *Id.* at 30 (following *Lowenfield v. Phelps*, 484 U.S. 231, 108 S.Ct. 546, 98 L.Ed.2d 568 (1988)). Additionally, we "recognize[d] the other legitimate purposes served by such a charge, namely, 'the avoidance of the societal costs of a retrial' both in time and money, and the 'possible loss of evidence that a new trial would entail.' " *Id.* (citation omitted) (quoting *Lowenfield*, 484 U.S. at 238, 108 S.Ct. 546 (majority opinion), 252 (Marshall, J., dissenting)).

¶ 7 In upholding the modified *Allen* instruction in *State v. Lactod*, 761 P.2d 23 (Utah Ct.App.1988), we announced a two-part test based on decisions from the United States Supreme Court and the Tenth Circuit. *See id.* at 30–31 (citing *Lowenfield*, 484 U.S. at 237, 108 S.Ct. 546; *United States v. Dyba*, 554 F.2d 417, 421 (10th Cir.1977)). We therefore "consider [1] whether the language of the supplemental charge can properly be said to be coercive [per se], and [2] whether it is coercive under the specific circumstances of the case." *Id.* at 30. In evaluating the modified *Allen* instruction in the instant case, we will address each consideration in turn, including Harry's request that we adopt the American Bar Association (ABA) model instruction.

### I. The *Allen* Instruction Is Not Coercive Per Se

¶ 8 Harry first argues that the modified *Allen* instruction in this case is coercive per se because it "overemphasized the importance of agreement"; "placed undue pressure on a dissenting juror"; "contained incorrect statements of law ... [and] improper and irrelevant information"; and "commented on the evidence" and "invaded the province of the jury." Based on existing precedent, we do not agree that the instruction is facially coercive.

### A. The Instruction Did Not Overemphasize the Importance of Agreement

¶ 9 In *Lactod*, we noted that the inclusion of certain "ideas" in an *Allen* charge will make such an instruction "inherently coercive." *Id.* at 30–31. For example, an instruction that includes the statement " '[y]ou have got to reach a decision in this case' " has been held to be inherently coercive, *id.* at 31 (alteration in original) (quoting *Jenkins v. United States*, 380 U.S. 445, 446,

---

6. Harry cites the Utah Constitution in support of his argument, *see* Utah Const. art. I, § 12, but fails to "adequately analyze[ ][his] state constitutional claim as an issue separate and distinct from its federal counterpart." *See State v. Rynhart*, 2005 UT 84, ¶ 12, 125 P.3d 938. Thus, we address his argument only under the United States Constitution. *See* U.S. Const. amend. VI.

7. *See also State v. Brown*, 853 P.2d 851, 861 (Utah 1992) ("We acknowledge that a supplemental instruction has the potential to be coercive, depending on its content, if given to jurors who have reached an impasse. In this case, however, the charge was given prior to jury deliberations and the instruction specifically directed the jurors not to give up their own 'conscientious conclusions.' ").

85 S.Ct. 1059, 13 L.Ed.2d 957 (1965) (per curiam)), because "[i]t is a misstatement of law that a criminal case must be decided at some time," *id.* (citing *People v. Gainer,* 19 Cal.3d 835, 139 Cal.Rptr. 861, 566 P.2d 997, 1006 (1977)). The instruction " 'should not overemphasize the importance of an agreement, suggest that any juror surrender his independent judgment, or say or do anything from which the jury could possibly infer that the court is indicating anxiety for or demanding some verdict, or subjecting the jury to the hardships of long deliberations.' " *Id.* (quoting *State v. Thomas,* 86 Ariz. 161, 342 P.2d 197, 200 (1959)).

¶ 10 The trial court here began its post-impasse charge to the jury by stating: "[1] Members of the jury, *I'm going to ask that you continue your deliberations in an effort to agree upon a verdict and dispose of this case.* I have a few additional comments I would like for you to consider as you do so." (Emphasis added.) The trial court merely asked the jurors to "continue [their] deliberations in an effort to agree upon a verdict." Other similar language has been upheld by this court. *See, e.g., id.* at 28, 31 (" 'I want to encourage you as best you can to reach some kind of agreement. . . .' ").

¶ 11 We also note the trial court's obvious efforts to comply with the guidance provided by this court in *Lactod,* where we urged trial judges to "appropriately admonish the jury to 'deliberate together in an atmosphere of mutual deference and respect giving due consideration to the views of others in the knowledge that in the end their verdict must reflect the composite views of all.' " *Id.* at 30 (quoting *Burroughs v. United States,* 365 F.2d 431, 434 (10th Cir.1966)). The trial court did so here, stating:

[4] In order to bring eight minds to a unanimous result, you must examine the questions submitted to you with candor and frankness *and with proper deference to and regard for the opinions of each other.* That is to say in conferring together, each of you should *pay due attention and respect to the views of the others, and*

*listen to each other's arguments* with the disposition to re-examine your own views. (Emphasis added.)

¶ 12 Furthermore, the trial court "counter-balance[d its] admonition with a charge to the jury members to not give up their conscientiously held opinions," *id.* at 30–31 (citing *United States v. Dyba,* 554 F.2d 417, 421 (10th Cir.1977); *United States v. Winn,* 411 F.2d 415, 417 (10th Cir.1969); *Burroughs,* 365 F.2d at 434). The court instructed:

[7] You are not partisans. You are judges; judges of the facts. Your sole interest here is to seek the truth from the evidence in the case. Remember at all times that *no juror is expected to yield a conscientious conviction* he or she may have as to the weight or effect of the evidence; but remember also that after full deliberation and consideration of the evidence in the case, *it is your duty to agree upon a verdict if you can do so without surrendering your conscientious conviction.*

(Emphasis added.)

¶ 13 In addition, the trial court "re-mind[ed] the jurors of the presumption of [Harry]'s innocence and the burden of proof imposed upon the [S]tate," *see id.* at 31 (citing *Winn,* 411 F.2d at 417); *see also United States v. McElhiney,* 275 F.3d 928, 949 (10th Cir.2001) (recommending that cautionary language—i.e., not to yield one's conscientious conviction—be supplemented with a reminder of the state's burden of proof). The court stated:

[8] You must also remember that *if the evidence in the case fails to establish guilt beyond a reasonable doubt, the accused should have your unanimous verdict of not guilty.* In order to make a decision more practicable in all cases [the law] imposes the burden of proof on one party or the other. In this case, *the burden of proof is on the State.* You may be as leisurely in your deliberations as the occasion may require, and should take all the time which you may feel is necessary, including recessing until tomorrow.

(Emphasis added.)

¶ 14 Finally, the trial judge concluded its modified *Allen* instruction as follows:

■ I will ask now that you retire once again, and *continue your deliberations with these additional comments in mind to be applied in conjunction with all of the instructions I have previously given to you.* Members of the jury, I will have this instruction copied and sent in shortly.... (Emphasis added.) Thus, the jury was reminded that any further deliberations should be undertaken in an attempt to comply with all of the court's instructions, not just the modified *Allen* charge.

¶ 15 Considering the post-deadlock instruction in its entirety, we do not agree that there is anything inherently improper in the court's encouragement that the jury try again to reach a verdict. *See State v. Lactod,* 761 P.2d 23, 32 (Utah Ct.App.1988) (determining the "level of coerciveness" by "evaluating the instruction as a whole, taking it in context with the trial itself and the jury's deliberations").

**B. On Its Face, the Instruction Did Not Place Undue Pressure on the Minority**

■ ¶ 16 Although we agree that an instruction delivered to a deadlocked jury that is directed only to the minority jurors is more likely to be problematic, we hold that the instruction used here is not coercive per se.[8] In *United States v. McElhiney,* 275 F.3d 928 (10th Cir.2001), the United States Supreme Court "emphasized that the pure *Allen* charge, which admonished only the minority, and not the majority, was still valid. It conceded, however, that a modified instruction, one that did not single out the minority, was less coercive." *Id.* at 938 n. 6 (citing *Lowenfield v. Phelps,* 484 U.S. 231, 237–38, 108 S.Ct. 546, 98 L.Ed.2d 568 (1988)); *see also State v. Brown,* 853 P.2d 851, 861 (Utah 1992) (upholding instruction, *given before jury deliberations,* that was, in part, directed to dissenting jurors and stating that

an *Allen* instruction "has the potential to be coercive, depending on its content, if given to jurors who have reached an impasse").

¶ 17 Here, the trial court's instruction first addressed only the minority:

[5] If a substantial majority of your number are for a conviction, *each dissenting juror* ought to consider whether a doubt in his or her own mind is a reasonable one, since it appears to make no effective impression upon the minds of so many equally conscientious fellow jurors, who bear the same responsibility, serve under the same oath, and have heard the same evidence, with, we may assume, the same attention and equal desire to arrive at the truth.

(Emphasis added.) Thus, jurors for acquittal who were in the minority were expressly instructed to reconsider whether any doubt they held was reasonable in light of the contrary conclusion of most of the others.

¶ 18 The court then addressed the jurors in favor of conviction, stating:

[6] On the other hand, if a majority *or even a lesser number* of you are for acquittal, *the other jurors* ought to seriously ask themselves again, and most thoughtfully, whether they do not have a reason to doubt the correction of a judgment, *which is not shared by several of their fellow jurors,* and whether they should distrust the weight and sufficiency of evidence which fails to convince *several of their fellow jurors* beyond a reasonable doubt.

(Emphasis added.) The trial court therefore instructed these "other jurors" to consider whether there was reason to doubt if even "a lesser number" than a majority supported acquittal. In other words, if either a majority or fewer believed that the defendant should be acquitted, the jurors in favor of conviction were also asked to reexamine their contrary conclusion. The court, however, then limited this obligation to reconsider only

---

8. The instruction upheld by this court in *State v. Lactod* was not directed only to minority jurors. *See* 761 P.2d 23, 28 (Utah Ct.App.1988). *But see id.* at 30–31 (discussing, with approval, *United States v. Dyba,* 554 F.2d 417, 420–21 (10th Cir. 1977), which upheld instruction directed to minority jurors using nearly identical language to the present case); *see also United States v. Reed,* 61 F.3d 803, 805 & n. 5 (10th Cir.1995) (upholding instruction nearly identical to that used in the present case, which was also directed to minority jurors); *United States v. Butler,* 904 F.2d 1482, 1487–88 (10th Cir.1990) (same); *United States v. Hernandez–Garcia,* 901 F.2d 875, 877, 879 (10th Cir.1990) (same); *United States v. McKinney,* 822 F.2d 946, 950–51 & n. 2 (10th Cir.1987) (same).

to situations where "several of their fellow jurors" were in favor of acquittal. Although this limitation is significant under the facts of this case, it is possible that the combination of paragraphs five and six might be acceptable in other contexts.[9] Consequently, we do not hold the instruction coercive per se. *See McElhiney*, 275 F.3d at 937–38 ("In spite of such critiques [of charges directed only to the minority], federal courts have been reluctant to hold that the *Allen* charge—at least in its pure form—is impermissibly coercive and therefore a violation of due process.").

¶ 19 We also reject the notion that instructing the jury at the time of impasse is coercive per se. We approved the *Allen* instruction given in *Lactod* despite the fact that it was delivered to an already deadlocked jury—expressly finding it not " 'coercive per se.' "[10] *See* 761 P.2d at 30–31; *see also State v. Clements*, 967 P.2d 957, 959 (Utah Ct.App.1998) (discussing the *Lactod* court's approval of delivering an *Allen* instruction to a deadlocked jury). Indeed, the Utah Supreme Court held that a modified *Allen* charge was not coercive, even though the jury was at "an impasse at six to two," because it was not directed only to the minority and because defense counsel objected but "declined to offer supplementation" after being given the chance to do so. *State v. Thomas*, 777 P.2d 445, 447–48 (Utah 1989). Furthermore, even the model instruction approved by the ABA allows a trial court to "give or repeat" a supplemental instruction to a deadlocked jury. *See* ABA Standards for Criminal Justice Discovery & Trial by Jury § 15–5.4(b) (3d ed. 1996) ("If it appears to the court that the jury has been unable to agree, the court may require the jury to continue their deliberations and may give or repeat an instruction as provided in section (a)."). In the present case, the trial court gave an instruction similar to that approved by the ABA before the jury began their deliberations and later gave the substantially different, modified *Allen* instruc-

tion once the jury deadlocked. The timing of the modified *Allen* instruction did not render it facially coercive.

C. **The Instruction Is Not Rendered Coercive Per Se by Incorrect Statements of Law or Improper or Irrelevant Information**

¶ 20 We hold that it was not coercive per se for the trial court to comment on the expense, time, and effort spent on the trial or the practicalities of a new trial by stating:

[2] This is an important case. *The trial has been expensive in time, effort and money* to both the defense and the prosecution. If you should fail to agree on a verdict, the case is left open and must be tried again. Obviously *another trial would only serve to increase the costs to both sides;* and there is no reason to believe that the case can be tried again by either side better or more exhaustively than it has been tried before you.

(Emphasis added.)

¶ 21 In *Lactod* we upheld an *Allen* charge, explaining:

Although [the trial judge] did indicate that he and the jury had invested a substantial amount of time in the case, he was only stating the obvious. He also indicated that he would only be on the bench for another six or eight weeks and didn't have another day to spend on the case, but counterbalanced these comments with [other] statements. . . .

*State v. Lactod*, 761 P.2d 23, 28, 31 (Utah Ct.App.1988) (footnote omitted). As in *Lactod*, the trial judge here merely stated the obvious without undue emphasis on the cost of retrial. *Cf. United States v. McElhiney*, 275 F.3d 928, 945 (10th Cir.2001) (holding that instruction was coercive, in part, because it "did not make a simple reference to the expense of another trial" but instead

---

9. Indeed, our colleague, Judge Bench, would hold that paragraph six adequately counterbalances paragraph five even under the facts of this case.

10. The Tenth Circuit has reached a similar conclusion. *See, e.g., United States v. McElhiney,*

275 F.3d 928, 942 (10th Cir.2001); *Butler*, 904 F.2d at 1488; *McKinney*, 822 F.2d at 951 (holding that *United States v. Blandin*, 784 F.2d 1048 (10th Cir.1986), stated a preference for giving *Allen* charges before deliberations but did not create a per se rule); *Dyba*, 554 F.2d at 421.

"underscored" the issue by stating, " 'This has been one of the greatest major efforts ever made in time and attention and money that I have noted in my 24 years as being a judge' ").

¶ 22 Harry also argues that the court's statement in paragraph two that "[i]f you should fail to agree on a verdict, the case is left open and must be tried again," is an incorrect statement of law. While we agree that it is more accurate to state that the case "may" be tried again, we do not believe that use of the word "must" renders the instruction coercive per se. *See United States v. Hernandez–Garcia*, 901 F.2d 875, 876–77, 879 (10th Cir.1990) (upholding instruction, which stated that failure to reach a unanimous verdict meant the case " 'must be tried again,' " and explaining that "the use of the word 'may' is preferable to the use of 'must' " but that using "must" is not reversible error).

**D. The Trial Judge Did Not Improperly Comment on the Evidence or Invade the Province of the Jury**

¶ 23 Harry argues that the court exceeded its role and impermissibly commented on the evidence when it stated:

> [3] Any future jury must be selected in the same manner and from the same source as you were chosen; and *there is no reason to believe that* the case could ever be submitted to eight men and women more conscientious, more impartial, or more competent to decide it; or that a more clear or clearer evidence—excuse me—or that *more or clearer evidence could be produced on behalf of either side.*

(Emphasis added.) Although not expressly considered by the appellate courts of this state, similar language has been upheld by the Tenth Circuit in the face of federal constitutional challenges like those asserted by Harry. *See, e.g., United States v. Reed*, 61 F.3d 803, 805 & n. 5 (10th Cir.1995) (" '[T]here is no reason to believe that ... more or clearer evidence could be produced.' "); *United States v. Butler*, 904 F.2d 1482, 1487 (10th Cir.1990) (same); *Hernandez–Garcia*, 901 F.2d at 879 (same); *see also United States v. Dyba*, 554 F.2d 417, 420–21 (10th Cir.1977) (emphasizing the "probability that there would not be better evidence"). We agree with these decisions and hold that the court's comments in paragraph three of the modified *Allen* charge do not render the instruction coercive per se.

**II. The ABA Model Instruction**

¶ 24 Harry also urges us to reject all *Allen* and modified *Allen* instructions and adopt the ABA standard as the exclusive choice for Utah trial courts. Harry relies on several state supreme courts that have disavowed either pure or modified *Allen* instructions, or both, in favor of the ABA model.[11] However, although we acknowledge that "[s]ome jurisdictions have abandoned the *Allen* charge," *Lactod*, 761 P.2d at 29 (citing *People v. Gainer*, 19 Cal.3d 835, 139 Cal.Rptr. 861, 566 P.2d 997, 1002–03 (1977)), we follow the Tenth Circuit's approach of " 'cautiously approv[ing] its use] in appropriate circumstances,' " *see id.* at 29–31 (quoting *United States v. Winn*, 411 F.2d 415, 416 (10th Cir.1969)).

¶ 25 We agree that the ABA version is an even-handed approach designed to foster productive deliberations without putting undue pressure on dissenting jurors. We further express our preference that the ABA instruction be utilized by Utah trial judges. Indeed, trial courts will be in a "safe harbor"

---

11. *See, e.g., People v. Gainer*, 19 Cal.3d 835, 139 Cal.Rptr. 861, 566 P.2d 997, 1004–07 & n. 16, 1009 (1977) (recommending the ABA instruction and disavowing *Allen* instructions that are directed to minority jurors, state the case must be retried, or mention the expense and inconvenience of a new trial because they violate the California Constitution); *State v. Nicholson*, 315 So.2d 639, 641–43 (La.1975) (expressing approval of the ABA instruction and prohibiting *Allen* instructions that state the case must be retried at significant time and expense, while instructing minority jurors to reconsider their views); *State v. Martin*, 297 Minn. 359, 211 N.W.2d 765, 769–73 (1973) (adopting the ABA instruction and prohibiting *Allen* instructions because they are "directed at deadlocked jurors" and state "that a case must at some time be decided"); *State v. Czachor*, 82 N.J. 392, 413 A.2d 593, 598–99 (1980) (recommending the ABA instruction and prohibiting the conventional *Allen* instruction, holding that repeating a modified *Allen* instruction directed to minority jurors and emphasizing the expense and inconvenience of retrial was "inherently coercive").

in terms of appellate review if they give the ABA instruction before an impasse occurs. We likewise view it as unlikely that adherence to the ABA language, even after the jury has deadlocked, will be deemed coercive under the circumstances. "[T]he inherent danger of coercion resulting from [a supplemental] instruction is dissipated, if not lost," *State v. Brown*, 853 P.2d 851, 861 (Utah 1992), if such instruction conforms to the ABA standards, *see* ABA Standards for Criminal Justice Discovery & Trial by Jury § 15–5.4(b) (3d ed.1996) (allowing trial court to "give or repeat" an appropriate instruction to a deadlocked jury). Thus, we again urge our colleagues on the trial bench to adopt the ABA model. *See Lactod*, 761 P.2d at 31.

¶ 26 Based upon the guidance from our supreme court, prior opinions of this court, and the decisions upon which that Utah precedent relies,[12] we decline Harry's invitation to limit our trial courts to using only the ABA model.

### III. The *Allen* Instruction Was Coercive Under the Circumstances

¶ 27 Although the instruction is not coercive per se, our inquiry is not complete; we must still consider whether the instruction constitutes an error "under the specific circumstances of th[is] case." *See State v. Lactod*, 761 P.2d 23, 31 (Utah Ct.App.1988). "Factors which we may consider in assessing coercive effect include 'any colloquy between the judge and the jury foreman, circumstances surrounding the giving of the instruction, and consideration of the [ABA] Standards on Criminal Justice Relating to Trial by Jury.'" *Id.* (quoting *Dyba*, 554 F.2d at 421); *see also United States v. McElhiney*, 275 F.3d 928, 940, 947–48 (10th Cir.2001) (using same three *Dyba* factors in its analysis). In *Lactod*, this court made note of the relevant circumstances in that case:

(1) There were no significant colloquies between the judge and the jury foreman. (2) It is not uncommon for the jury to advise the court that it is deadlocked and, thereafter, agree to a verdict.... [T]he jury continued to deliberate after receiving the instruction for another hour and fifteen minutes, suggesting that minority jurors did not instantly acquiesce to the majority. (3) The judge did not threaten to or keep the jury deliberating for an unreasonable length of time. (4) The instruction was reasonably within the ABA-recommended standards for verdict-urging instructions.

761 P.2d at 31.

¶ 28 As in *Lactod*, the trial court here "did not threaten to or keep the jury deliberating for an unreasonable length of time." *See id.* However, the circumstances in the present case diverge from those in *Lactod* at several significant points.

¶ 29 First, while "[t]here were no significant colloquies between the judge and the jury foreman" in *Lactod*, *see id.*, the jurors here twice asked the trial court for information of significance to the outcome of Count II. During deliberations, the jury requested additional evidence about the vehicle in which Harry was transported and the clothing he was wearing when arrested. The clear implication from the type of information requested is that the jury sought additional evidence relating to the possession charge. After that request was denied, the jury again communicated with the trial judge, indicating that they were deadlocked seven to one on the possession charge and that the impasse "will not change."

¶ 30 Second, the instruction in *Lactod* did not urge only minority jurors to reevaluate their positions. *See id.* at 28. In contrast, paragraph five of the instruction at issue here urged only the minority juror to reconsider her position in favor of acquittal, while in paragraph six, those for conviction were asked to reevaluate their positions only if "several of their fellow jurors" had a reasonable doubt.

¶ 31 Where the jury voluntarily informed the judge that they were split seven to one, the trial court's instruction that only the holdout juror reconsider whether the doubt in her mind was reasonable in light of the fact that so many other similarly informed and motivated jurors had concluded otherwise was coercive. While we recognize that

---

**12.** *See* cases cited *supra* note 8.

the trial court attempted to counterbalance the statement directed to the minority juror with the instruction "that no juror is expected to yield a conscientious conviction he or she may have as to the weight or effect of the evidence," the knowledge that one juror stood alone against the others made this statement insufficient to counterbalance fully the prior statements urging acquiescence.

¶ 32 In *United States v. McKinney*, 822 F.2d 946 (10th Cir.1987), the Tenth Circuit held otherwise, upholding language directed to the minority where the instruction contained sufficient counterbalancing statements, such as advising jurors not to "yield [their] conscientious conviction[s]." *See id.* at 950; *see also United States v. Dyba*, 554 F.2d 417, 420 n. 1, 421 (10th Cir.1977); *cf. United States v. McElhiney*, 275 F.3d 928, 943–44, 949 (10th Cir.2001) (stating "that [the Tenth Circuit's prior] approval of the *Allen* charge's use was predicated on the inclusion of" the language "that no juror should surrender his or her conscientiously held convictions," and concluding that the omission of such cautionary language "substantially heightened" the instruction's "coercive effect"). However, unlike *McKinney*, at the time the supplemental instruction was given in this case, the jury knew that the trial judge had been informed that a single juror was not in agreement with the majority. Thus, the focus of the modified *Allen* charge on that single juror was particularly acute, creating the possibility that the holdout juror might have the mistaken impression that she was being directly and individually instructed by the trial judge to defer to the conclusions of the majority. Once the jury foreperson volunteered the information that all were in agreement but one, the use of an instruction asking only that dissenting juror to reconsider her view became unacceptably coercive. *Cf. Lowenfield v. Phelps*, 484 U.S. 231, 239, 108 S.Ct. 546, 98 L.Ed.2d 568 (1988) ("[I]nquiry into the jury's numerical division necessitated reversal because it was generally coercive and almost always brought to bear 'in some degree, serious although not measurable, an improper influence upon the jury.' " (quoting *Brasfield v. United States*, 272 U.S. 448, 450, 47 S.Ct. 135, 71 L.Ed. 345 (1926))).

¶ 33 Furthermore, the fact that the jury reached a verdict only twenty-six minutes after receiving the modified *Allen* instruction suggests that the sole dissenting juror was, in fact, coerced [13] and "instantly acquiesce[d] to the majority." [14] *Cf. State v. Lactod*, 761 P.2d 23, 26 (Utah Ct.App.1988) ("[T]he jury continued to deliberate after receiving the instruction for another hour and fifteen minutes, suggesting that minority jurors did not instantly acquiesce to the majority."). The jury in *Lactod*, which had already been sequestered for five hours, deliberated for an additional hour and fifteen minutes after the verdict-urging instruction was given. *See id.* at 28; *see also Lowenfield*, 484 U.S. at 235, 240, 108 S.Ct. 546 ("We are mindful that the jury returned with its verdict soon [ (thirty minutes) ] after receiving the supplemental instruction, and that this suggests the possibility of coercion.") In this case, where the jury deliberated for less than thirty minutes after receiving the in-

13. Whether the time it takes a jury to reach a verdict after receiving a verdict-urging instruction demonstrates coercion must be determined on a case-by-case basis. *See, e.g., United States v. Reed*, 61 F.3d 803, 804–05 (10th Cir.1995) (upholding instruction where jury returned one hour later); *United States v. Hernandez–Garcia*, 901 F.2d 875, 876–77 (10th Cir.1990) (upholding instruction where jury returned one hour and thirty minutes later); *United States v. McKinney*, 822 F.2d 946, 950 (10th Cir.1987) (upholding instruction where jury returned one hour and twenty minutes later).

14. Even where deliberations continue for a long time after delivery of such an instruction, it does not follow that the potential for coercion is lost. *See, e.g., United States v. Zabriskie*, 415 F.3d 1139, 1143–44, 1148 (10th Cir.2005) (holding that modified *Allen* instruction was coercive, even where jury deliberated at least six hours after instruction, because trial court delivered instruction to a single juror during an ex parte colloquy); *United States v. McElhiney*, 275 F.3d 928, 946–47 (10th Cir.2001) (comparing timing between instruction and verdict-four hours in the "best case scenario" and one hour and thirty minutes "in the worst case"—to other cases where "the timing ... did not overcome the coerciveness arising from the flawed language of the charge").

struction, coercion is strongly inferred.[15]

¶ 34 Finally, under the circumstances of this case, the instruction was not "reasonably within the ABA-recommended standards for verdict-urging instructions." *See Lactod,* 761 P.2d at 31. The ABA standard does not single out the minority jurors but instead sends an even-handed message "that in the course of deliberations, a juror should not hesitate to reexamine his or her own views and change an opinion if the juror is convinced it is erroneous." ABA Standards for Criminal Justice Discovery & Trial by Jury § 15–5.4(a)(4) (3d ed.1996). Likewise, the ABA instruction makes no mention of the cost or inconvenience of retrial. *See id.* Because the deadlocked jury told the trial court how it was divided, the modified *Allen* charge was directed only to the sole dissenting juror, and the jury reached a unanimous verdict only twenty-six minutes later, we hold that the instruction given to the deadlocked jury was coercive under the facts and circumstances of this case.

## CONCLUSION

¶ 35 Although we hold that the trial court's modified *Allen* instruction is not coercive per se, the court erred by delivering it under the circumstances of this case. Accordingly, we reverse Harry's felony possession conviction and remand his case for a new trial on that count.

¶ 36 Reversed.

¶ 37 I CONCUR: JUDITH M. BILLINGS, Judge.

BENCH, Judge (concurring and dissenting):

¶ 38 I agree that there is nothing about the modified *Allen* instruction, *see Allen v. United States,* 164 U.S. 492, 501, 17 S.Ct. 154, 41 L.Ed. 528 (1896), that is per se coercive. I also agree that use of the ABA Model Instruction should be encouraged, as it will give trial courts a "safe harbor" when they are faced with a deadlocked jury. However, I cannot agree that the instruction given here was "coercive under the specific circumstances of the case." *See State v. Lactod,* 761 P.2d 23, 30 (Utah Ct.App.1988) (citing *Lowenfield v. Phelps,* 484 U.S. 231, 237, 108 S.Ct. 546, 98 L.Ed.2d 568 (1988)).

¶ 39 After deliberating for over three hours, the jurors informed the trial court that they had reached "a unanimous decision on Count II [driving under the influence]. However for Count I [possession or use of a controlled substance,] we are ... undecided and will not change." The trial court brought the jurors back into the courtroom and gave them the modified *Allen* instruction. The court knew that the jurors were divided 7–1 on Count I, but did not know whether the majority was in favor of conviction or acquittal. The trial court therefore proceeded to evenhandedly address those who were for conviction and those who were for acquittal, as follows:[1]

[5] *If a* substantial *majority of your number are for a conviction, each dissenting juror ought to consider whether a doubt in his or her own mind is a reasonable one,* since it appears to make no effective impression upon the minds of so many equally conscientious fellow jurors, who bear the same responsibility, serve under the same oath, and have heard the same evidence, with, we may assume, the same attention and equal desire to arrive at the truth.

[6] *On the other hand, if a majority* or even a lesser number *of you are for acquittal, the other jurors ought to seriously ask themselves again,* and most thoughtfully, whether they do not have a reason to

---

15. Relying on *State v. Heaps,* 2000 UT 5, 999 P.2d 565, the State argues that the jury poll answers "are the best evidence that the *Allen* instruction did not coerce the jurors' verdict." We disagree. *Heaps* reviewed whether the trial court properly polled a juror who initially stated that the verdict was not his and that "[he] conceded." *See id.* ¶¶ 9, 12. *Heaps* was not about either erroneous jury instructions in general or a coercive *Allen* instruction in particular. We thus do not find it helpful to our analysis and, nevertheless, do not believe that the jury polling in this case erases the prior coercive effect of the instruction.

1. I use the same paragraph numbering used by the majority to highlight the most important parts of the instruction.

doubt the correction of a judgment, which is not shared by several of their fellow jurors, and *whether they should distrust the weight and sufficiency of evidence* which fails to convince several of their fellow jurors beyond a reasonable doubt.

(Emphasis added.)

¶ 40 While neither paragraph is a model of clarity, I believe that paragraph six adequately counterbalances the provisions of paragraph five such that all of the jurors, both those for and those against conviction, were asked to reevaluate their positions. The trial court then emphasized that no juror should surrender his or her conscientiously-held beliefs about the case:

[7] You are not partisans. You are judges; judges of the facts. Your sole interest here is to seek the truth from the evidence in the case. Remember at all times that *no juror is expected to yield a conscientious conviction he or she may have as to the weight or effect of the evidence;* but remember also that after full deliberation and consideration of the evidence in the case, *it is your duty to agree upon a verdict if you can do so without surrendering your conscientious conviction.*

(Emphasis added.)

¶ 41 Reversal here is not warranted under precedent of the United States Supreme Court or under prior precedent of this state. The trial court in this case did not coerce any of the jurors to surrender their conscientious convictions in order to reach a verdict. I would therefore affirm Harry's convictions.