2014 UT App 109

**STATE of Utah, Plaintiff and Appellee,**

v.

**Geoffrey Thomas HUNT, Defendant and Appellant.**

**No. 20120886–CA.**

Court of Appeals of Utah.

May 15, 2014.

---

Jarom B. Bangerter, Park City, and Joseph E. Wrona, for Appellant.

Sean D. Reyes and Ryan D. Tenney, Salt Lake City, for Appellee.

Judge GREGORY K. ORME authored this Memorandum Decision, in which Judges MICHELE M. CHRISTIANSEN and JOHN A. PEARCE concurred.

### Memorandum Decision

ORME, Judge:

¶ 1 Defendant Geoffrey Thomas Hunt was acquitted of rape, object rape, forcible sexual abuse, and forcible sodomy, but he was convicted of unlawful sexual activity with a minor, a third degree felony. He appeals that conviction, claiming that he received ineffective assistance of counsel, that the trial court erred in excluding some evidence, and that the trial court improperly urged the jury to reach a verdict. We affirm.

¶ 2 Defendant was a friend of the victim's parents and was often at their home.[1] The victim (Victim) claimed that she and Defendant, who was twenty-one years old at the time, became very close and had at least three sexual encounters when she was fifteen years old.

¶ 3 First, Victim alleged that Defendant picked her up from school and took her to get some items at home—something he was authorized to do as one of her non-family emergency contacts listed with the school. Victim claimed that after getting what she needed from home, they went for a drive. Victim testified that during the drive Defendant initiated sexual contact, culminating in Defendant putting his fingers in Victim's vagina. Based on this allegation, Defendant was charged with one count of object rape. *See* Utah Code Ann. § 76–5–402.2(1) (LexisNexis Supp.2013)[2] (defining object rape as "penetration, however slight, of the genital or anal opening of another person … by any foreign object, substance, instrument, or device, including a part of the human body other than the mouth or genitals"). On this charge, the jury found Defendant not guilty.

¶ 4 Second, Victim claimed that during a party at her house, Defendant got drunk, kissed Victim, and fondled her over her clothes. Based on this accusation, Defendant was charged with one count of forcible sexual abuse. *See id.* § 76–5–404 (2012). The jury found Defendant not guilty on this charge as well.

¶ 5 Third, Victim claimed that during a family barbecue, Defendant went into her bedroom and forced her to perform oral sex and then have intercourse with him. As a

---

1. "On appeal, we recite the facts from the record in the light most favorable to the jury's verdict and present conflicting evidence only as necessary to understand issues raised on appeal." *State v. Bluff*, 2002 UT 66, ¶ 2, 52 P.3d 1210 (citation and internal quotation marks omitted).

2. Because the statutory provisions in effect at the relevant time do not differ in any way material to our analysis from those now in effect, we cite the current version of the Utah Code as a convenience to the reader.

result of this set of allegations, Defendant was charged with one count of forcible sodomy and one count of rape. *See id.* §§ 76–5–402, –403 (Supp.2013). The jury also found Defendant not guilty on both of these counts but convicted Defendant of unlawful sexual activity with a minor, a lesser included offense under the rape charge. *See id.* § 76–5–401 (2012) (making it a third degree felony to have "sexual intercourse" or participate in other sexual activity "under circumstances not amounting to rape" with a minor who is older than fourteen but younger than sixteen).

## I. Ineffective Assistance of Counsel

¶ 6 Defendant contends that he received ineffective assistance from his trial counsel because his trial counsel failed to use a peremptory challenge to remove a problematic potential juror and failed to object to a proposed *Allen* instruction. To prevail on his claim of ineffective assistance of counsel, Defendant must show that "counsel's representation fell below an objective standard of reasonableness," *Strickland v. Washington,* 466 U.S. 668, 688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and that Defendant "was prejudiced thereby," *id.* at 702, 104 S.Ct. 2052. Our review of trial counsel's performance is "highly deferential," *id.* at 689, 104 S.Ct. 2052, and to succeed, Defendant must show that "there was *no 'conceivable tactical basis* for counsel's actions,'" *State v. Clark,* 2004 UT 25, ¶ 6, 89 P.3d 162 (emphasis in original) (quoting *State v. Bryant,* 965 P.2d 539, 542 (Utah Ct.App.1998)).

¶ 7 During jury selection, one potential juror reported that she had almost been the victim of a sexual assault when she was seventeen years old. She explained that the incident occurred decades earlier, the aggressor was a stranger, and the potential juror escaped unharmed. When asked if this experience would prevent her from making a fair judgment in the case, she replied, "I think I'm fair in everything that's set before me." She also informed the trial court that her son had been arrested once and she felt it was a "miscarriage-of-justice type of thing." Finally, in contrast to some other potential jurors who shared her affiliation

with a religion that proscribes the use of alcohol, she stated that she harbored no prejudice toward someone who drank alcohol and, indeed, had many friends who drank. Defendant's trial counsel moved for this potential juror to be removed for cause, but the trial court apparently believed that the potential juror could be objective and declined to remove her. Trial counsel could have used a peremptory challenge to remove the potential juror, but he did not. Instead, trial counsel used all of his peremptory challenges to exclude other prospective jurors. As a result, the potential juror was empaneled and served on the jury in this case.

¶ 8 We can easily conceive of a tactical basis for trial counsel's actions. Trial counsel may have thought that removing this potential juror for cause was worth a try but may also have believed that his peremptories would be better used to exclude other jurors if that attempt failed. Upon reflection, trial counsel may have decided that this potential juror's experience with her son's arrest and her lack of prejudice toward alcohol consumption made her more sympathetic toward Defendant. Trial counsel may even have reckoned that the trial court was correct in concluding, as it apparently did, that the potential juror's experience was different enough from Victim's experience that the potential juror could be objective. The Utah Supreme Court has held that because "the process of jury selection is a highly subjective, judgmental, and intuitive process, trial counsel's presumably conscious and strategic choice to refrain from removing a particular juror is ... presumed to constitute effective representation." *State v. Litherland,* 2000 UT 76, ¶ 20, 12 P.3d 92. Absent any compelling evidence to the contrary, trial counsel's presumptively sound decision not to use a peremptory challenge in this situation did not constitute ineffective assistance of counsel.

¶ 9 We also conclude that trial counsel was not deficient for failing to object to the trial court's efforts to help the jury reach a verdict. During deliberations, the jurors informed the trial court that they were having trouble coming to a decision, but the jury did not provide any more information. The trial court called the jurors in and discussed

different options with them, including the possibility of an instruction pursuant to *Allen v. United States*, 164 U.S. 492, 501, 17 S.Ct. 154, 41 L.Ed. 528 (1896):

> I can give you what we call an *"Allen* charge." There was a famous case many years ago, and nobody remembers the other parties anymore, but it was somebody named Allen. And ... it was a very difficult case. And the jury came back and said, We can't reach a verdict.
>
> And the judge said, You know what? This ... really matters. And he really kind of told them how important it was and how stern it was and made them go back and deliberate. And said, You make another effort to come to a verdict.
>
> That's called an *"Allen* charge." And this is a case that might fit in that category, because this is the kind of case we absolutely don't want to try again. What happens is if you're not able to reach a verdict, then it's mistried. And we try it again. And that's ... a struggle.
>
> This is the time we want to reach a verdict if there's any way that you can. But I don't want to change the instructions we've given you about not surrendering your honest convictions and, you know, all of those instructions stand.
>
> Let me ... visit with Counsel for just a minute.

¶ 10 During the ensuing bench conference, the State proposed letting the jurors go home for the night, but Defendant's trial counsel wanted to let the jurors vote on what to do. Instead of giving the *Allen* instruction, the contours of which it had outlined for the jury, the trial court called the jury back in and informed them as follows:

> I'm not gonna have you make the decision right here, right now. I want you to go back as a group and then let me know your group decision.
>
> You can either ... adjourn for the night. You can go home. We can come back tomorrow and carry on. We can take what we've got. Or we can continue tonight and

carry on ... to try and resolve all of the counts.

When the jurors returned some time later,[3] they informed the trial court that instead of voting on an option, they had been able to reach a unanimous verdict. They found Defendant not guilty on all charges, returning a single guilty verdict on a lesser included offense, unlawful sexual activity with a minor.

¶ 11 While the possibility of giving an *Allen* instruction was discussed in some detail with the jury, the trial court endeavored to avoid actually giving it to the jury. But to the extent the trial court charged the jury with such an instruction, it is entirely conceivable that trial counsel reasonably saw this as being advantageous to Defendant. Indeed, unlike the prosecutor, Defendant's trial counsel did not want to send the jurors home for the night, instead arguing that they should be allowed to continue deliberating if they chose to do so. The obvious implication is that trial counsel guessed—accurately, as it turned out—that the jury was working toward a verdict that largely favored Defendant, all things considered. Because this was an objectively reasonable strategy, we conclude that Defendant received effective assistance of counsel in this regard, too.

## II. Exclusion of School Attendance Records

■ ¶ 12 Defendant argues that the trial court erred in excluding Victim's school attendance records. At trial, Defendant sought to rebut Victim's claim that he picked her up from school by introducing Victim's attendance records under the business records exception to the hearsay rule. *See* Utah R. Evid. 803(6) (providing a hearsay exception for records "kept in the course of a regularly conducted activity" as long as, inter alia, "neither the source of information nor the method or circumstances of preparation indicate a lack of trustworthiness"). The State objected, arguing that the records were not trustworthy because the witness through whom Defendant attempted to introduce the school records had testified that teachers

---

**3.** How long the jury was out after returning to its deliberations is not clear from the record. De-

fendant claims it was approximately an hour.

were not always accurate in taking attendance and that there may have been data lost due to the school's recent transfer to a new software platform. The trial court sustained the State's objection and the evidence was not presented to the jury.

¶ 13 Defendant asserts he was prejudiced by this decision because the "case essentially came down to whether or not the jury believed [Victim's] story." The jury, however, apparently did not believe Victim's story because it found Defendant not guilty of object rape and not guilty of the lesser included offense associated with that charge, and these were the only charges that related to the claimed early release from school.

¶ 14 "[W]e find errors by the trial court harmful only if there is a 'reasonable likelihood' that the verdict would have been different" absent the errors. *State v. Clopten*, 2009 UT 84, ¶ 39, 223 P.3d 1103 (quoting *Steffensen v. Smith's Mgmt. Corp.*, 862 P.2d 1342, 1347 (Utah 1993)). In this case, the verdict on object rape was in Defendant's favor, and he cannot show—and, indeed, would not want to show—that introducing the school records would have changed that verdict. Defendant nonetheless contends that Victim's apparently discredited story, without being further discredited by the school records, may have indirectly influenced the jury to convict Defendant on a different charge. We conclude that this possibility is entirely too speculative and that the admission of the school attendance records is simply not likely to have affected the single guilty verdict returned by the jury that was, after all, on a charge based on events unconnected in any way to school attendance. Any error concerning the admission of attendance records was therefore harmless.

### III. Exclusion of Evidence About Father's Alleged Infidelity

■ ¶ 15 At trial, Victim's father (Father) testified that Victim's behavior changed around the time of the alleged abuse. Father testified that she recoiled at his touch and that she refused to get close to him or other people. He said, "[I]t was like I would have to force her to hug me or give me a kiss

good-bye or something." Based on this and other behavior, Father concluded that Victim was "acting like somebody's abused her." During cross-examination, trial counsel asked Father if there was anything else traumatic happening in Victim's life that could have explained her behavior, and Father readily conceded that he and his wife were separated at the time. Trial counsel then asked if the separation involved accusations of unfaithfulness. The State objected on the basis of relevance, and the trial court sustained the objection. The trial court allowed trial counsel to question Father about the impact of the separation on Victim but did not allow trial counsel to delve into the reasons for the separation. Defendant contends that the trial court erred when it prevented him from questioning Father about his possible marital infidelity.

■ ¶ 16 "A trial court has broad discretion in deciding whether evidence is relevant, and we review a trial court's relevance determination for abuse of discretion." *State v. Fedorowicz*, 2002 UT 67, ¶ 32, 52 P.3d 1194. That said, "[t]he standard for determining the relevancy of the evidence is very low, and even evidence with the slightest probative value is relevant." *State v. Smedley*, 2003 UT App 79, ¶ 15, 67 P.3d 1005 (citations and internal quotation marks omitted). The trial court may have exceeded the sound exercise of discretion in this regard, considering that accusations about Father's marital infidelity—if known to Victim—had at least "the slightest probative value" in explaining Victim's unusual behavior, and perhaps to an extent not presented by her parents' mere separation. *See id.* Indeed, testimony that Victim may have blamed Father for her parents' separation might have dispelled in the jury's mind the possibility that her behavioral changes could only be explained by her sexual encounters with Defendant.

¶ 17 Nonetheless, any error in excluding this line of questioning was ultimately harmless. Defendant argues that questioning Father about his alleged infidelity was important to show the jury not just that Victim's parents had separated but to show them whom Victim might have blamed for the separation. Victim's mother, however, also

testified that her daughter "started withdrawing" and "stopped talking to me as much as she used to." And Father testified that Victim withdrew from other people as well as from him. Therefore, it is not immediately clear how evidence that was relevant to prove that Victim blamed Father for the separation and withdrew from him specifically for that reason would also explain why she simultaneously withdrew from others, including her mother.

¶ 18 It is illogical to suggest that a jury that acquitted Defendant of four felony counts, even though it heard nothing about the precise reason for the separation of Victim's parents, would have also acquitted him of the one lesser included offense of which he was convicted had only they known more about the reason for the separation. Victim's lack of credibility in the eyes of the jury—not the inference to be drawn from her changed behavior—explains its verdict.

¶ 19 Despite its several acquittals and apparent disbelief of much of what Victim had to say, the jury could nonetheless readily conclude that Defendant had an unlawful sexual relationship with her in the total absence of any evidence about a change of behavior on her part, and the same would be true if it knew that infidelity explained the marital separation and concluded that the separation was the sole cause of her changed behavior. Defendant himself made incriminating statements that would support the jury's conclusion that Defendant was at least guilty of unlawful sexual activity with a minor. For instance, Defendant testified that Victim attempted to seduce him by luring him into a garage where she was waiting in the nude. Explaining why he did not stay in the garage for very long, he testified, "It's something I wouldn't want to risk. . . . Like I say, it was a common area and, you know. Granted nothing happened [but], it would look incredibly awkward . . . if a parent [came] out to smoke or something[.]" He then testified that he did not tell Victim's parents about the incident because he "didn't feel it was necessary." Additionally, during a recorded telephone call with Defendant, Victim asked him if he had told anyone that they had sexual intercourse. He did not deny the encounter.

Instead, he said he had not, and asked Victim, "Did you?" The jury could have inferred from all this, without any consideration of Victim's change in behavior, that Defendant had a sexual encounter with Victim, one that was unlawful given her age.

¶ 20 In sum, even if the jury had heard all about Father's alleged infidelity and attributed all of Victim's behavioral changes to the trauma caused by his infidelity, the jury would still have convicted Defendant of unlawful sexual activity with a minor based on the totality of the evidence presented at trial. It follows that any error in this regard did not prejudice Defendant because "no reasonable likelihood exists that the error affected the outcome of the proceedings." *Jones v. Cyprus Plateau Mining Corp.*, 944 P.2d 357, 360 (Utah 1997).

### IV. *Allen* Instruction

¶ 21 Finally, Defendant argues that he did not receive a fair trial because the trial court delivered a modified *Allen* instruction. Trial counsel did not preserve this issue, and we therefore review it for plain error. *See State v. Moa*, 2012 UT 28, ¶ 24, 282 P.3d 985. We note that *Allen* instructions are not invariably coercive, *see State v. Harry*, 2008 UT App 224, ¶ 8, 189 P.3d 98, and can "be a reasonable and proper exercise of the court's power to guide the jury to a fair and impartial verdict," *State v. Lactod*, 761 P.2d 23, 30 (Utah Ct.App.1988). Under certain circumstances, however, an *Allen* instruction can be coercive and result in an unfair trial. *See Harry*, 2008 UT App 224, ¶ 27, 189 P.3d 98.

¶ 22 In this case, we conclude that the trial court gave no *Allen* instruction, coercive or otherwise, to the jury. The jury asked the trial court for help in reaching a verdict, and the trial court obliged by accurately describing several available options, including offering an appropriate description of an *Allen* instruction. The trial court, however, concluded that it did not want to "change the instructions we've given you about not surrendering your honest convictions and . . . all of those instructions stand." Instead, at the urging of Defendant's trial counsel, the court allowed the jurors to decide how they wanted

to proceed. They left to discuss their options, turned to completing their deliberations, and arrived at a verdict. Aside from his claim that the trial court gave a coercive *Allen* instruction, Defendant does not contend that the trial court's instructions, comments, or demeanor were coercive in any way.

¶ 23 We conclude that no *Allen* instruction was actually given, and that the court did not otherwise inappropriately coerce the jury to reach a verdict. Moreover, as previously stated, *see supra* ¶ 11, to the extent that the trial court urged the jury to come to a decision if possible, this approach had the support of Defendant's counsel and may well have worked to his advantage given his acquittal on all but one of the many charges he faced.

¶ 24 Affirmed.